## Taylor Motor Rental, Inc., Appellant, v. Associates Discount Corporation, Inc.

Argued June 15, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Before DOTY, J., without a jury.

*William C. Thompson*, with him *James J. Daly*, for appellant.

*John J. Brennan*, with him *Richard D. Rivers*, and *Barnes, Dechert, Price, Myers & Rhoads*, for appellee.

OPINION BY WOODSIDE, J., September 12, 1961:

This is an appeal from the judgment of the court of common pleas entered for the defendant in an action of replevin. The case was tried before Judge DOTY of the Court of Common Pleas No. 2 of Philadelphia. The following extracts from the opinion which he wrote on overruling the plaintiff's exceptions to the court's findings and conclusions set forth the procedure, the facts and the reasons for the judgment:

"An action of replevin with bond was instituted by the plaintiff for recovery of a 1955 Studebaker automobile and the Sheriff delivered possession of that au-

tomobile to the plaintiff. The defendant did not file a counter bond and the plaintiff still retains possession of the vehicle.

"At the conclusion of the testimony, the court sitting without a jury found against the plaintiff on its complaint and in favor of the defendant in the amount of $3,000 plus interest, which was the value of the car as attested to by plaintiff's affidavit of value filed at the inception of this case.

"In its complaint the plaintiff alleges that it had purchased the automobile in question from McCurry Motors, Inc., (hereinafter referred to as 'McCurry'), and that unlawfully and without right the defendant seized and took possession of the automobile some months later. In its answer and new matter, the defendant admitted that it had seized the automobile from the plaintiff but denied that it had done so unlawfully and without right. On the contrary, the defendant alleged that it had financed the acquisition of the automobile by McCurry and that it had entered into a security agreement which reserved title to and secured interest in the automobile. The defendant further averred that it had perfected its security interest by filing a financing statement both with the Secretary of the Commonwealth of Pennsylvania and the Prothonotary of Philadelphia County.

"Under the terms of the security agreement, McCurry had possession of the automobile only for the purpose of resale in the ordinary course of its business.

"This case was tried by the court sitting without a jury and, at the conclusion of the evidence, the court entered a finding against the plaintiff on its complaint and in favor of the defendant on its claim for the value of the automobile as referred to above. The evidence showed that, as a check on the dealer's performance of the agreement, defendant followed the customary prac-

tice of physically inspecting this automobile in the dealer's possession from time to time. On a number of occasions the physical inspection revealed that the automobile in question was on McCurry's premises and there was no evidence of it having been sold to a third party. The evidence showed that on April 18, 1955, some four months after its purchase by McCurry, a physical inspection revealed that McCurry no longer had possession of the automobile in question. Upon further investigation, the defendant ascertained that the automobile had been allegedly sold by McCurry to the plaintiff.

"The evidence further showed that Fred McCurry, the operator of McCurry Motors, Inc., was also an officer and stockholder of the plaintiff, the person who kept the plaintiff's books and records, and the one who signed plaintiff's checks and, in general, conducted the affairs of the plaintiff corporation. The application for certificate of title which plaintiff executed and upon which plaintiff relies as proof that it is the lawful owner of this vehicle was signed on behalf of both plaintiff and McCurry only by Fred McCurry acting for each corporation. After the date of the alleged sale it is clear that the automobile was kept in a building which was shared by McCurry and plaintiff, and the only persons using the automobile were Fred McCurry and Emil Taylor, the president of plaintiff corporation, and one Clarence Leith, who was both vice-president of plaintiff corporation and a salesman for McCurry.

"The precise question in this case is which of the parties was entitled to possession of the automobile. Plaintiff claimed its right to possession by virtue of its purported purchase from McCurry, and the defendant claimed its right to possession of the automobile by virtue of its secured interest.

"There can be no question that the defendant had a valid and perfected security interest in the automobile

under the provisions of the Uniform Commercial Code, 12A P.S. 1-101, et seq. It gave value for the automobile by its payment of the purchase price to the Studebaker factory, it obtained a security agreement which described the automobile by serial number and it had on file in appropriate offices a properly executed financing statement which described the type of property it was financing for McCurry Motors . . .

"Defendant's security interest in the automobile was enforceable against everyone, except as otherwise provided in the Commercial Code . . . .

"Plaintiff claims to be a buyer in the ordinary course of business and relies on (§9-307) . . .

. "It is clear that plaintiff was not a buyer in the ordinary course of business as defined by the Commercial Code. Both the relationship of plaintiff and McCurry, with their interlocking officers, shareholders and employes and the fact that both plaintiff corporation and McCurry Motors, Inc., were managed by Fred McCurry negates this. Moreover, Fred McCurry acted for both plaintiff and McCurry Motors, Inc., in applying for the certificate of title in the name of the plaintiff. . . . The purported sale by McCurry Motors, Inc., to the plaintiff was merely a paper transaction for the benefit of Fred McCurry, who now has possession of the automobile for which defendant has never been paid."

In its opinion, the court below cited §9-307, and §1-201(9) of the Uniform Commercial Code. In doing so, it quoted these sections as they are contained in the Act of October 2, 1959, P. L. 1023, 1228, 1046. See 12A P.S. §9-307 and §1-201(9). The transaction here being litigated occurred prior to the reenactment of, and amendments to, the Commercial Code made in 1959. This case is governed by the same numbered sections as they appeared in the Uniform Commercial Code of April 6, 1953, P. L. 3.

As contained in the 1953 Code, §9-307 and §1-201(9) provided: "Section 9-307. Buyers of Goods.—(1) In the case of inventory, and in the case of other goods as to which the secured party files a financing statement in which he claims a security interest in proceeds, a buyer in ordinary course of business takes free of a security interest even though perfected and even though the buyer knows of the terms of the security agreement." (P. L. 165)

"Section 1-201 . . . (9) 'Buyer in ordinary course of business' means a person who buys goods in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker or a person buying goods from a farmer. 'Buying' may be for cash or on secured or unsecured credit and includes receiving goods, securities or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt." (P. L. 24)

The amendments made to these sections by the Act of 1959, supra, would strengthen the appellee's position if they were applicable, but even under the Act of 1953, the appellant cannot prevail.

Only if the appellant were "a buyer in ordinary course of business" would it take free of the appellee's security interest. The facts set forth above clearly support the trial court's finding that the transaction was not in the ordinary course of business. The findings, conclusions and observations made in the opinion of the court below, so far as we have copied them in this opinion, are applicable under the Act of 1953 as well as under the Act of 1959.

The judgment in this case was entered August 23, 1960, and the appeal was not taken until March 29, 1961. The appellant moved to quash the appeal. We have no power to extend the time for taking an appeal, and we ordinarily enter an order quashing an appeal

not taken within the statutory period after the entry of the judgment. However, without detailing the facts, it appears to us that both the court below and the parties considered the judgment entered August 23, 1960, to have been opened. Under all the circumstances, we are of the opinion that we should pass upon the merits of the appeal. Thus considering it, we find no merit in it.

Judgment affirmed.