# CRYSTAL STATE BANK v. COLUMBIA HEIGHTS STATE BANK.

203 N. W. 2d 389.

January 5, 1973—No. 43426.

*Robert Lowell Smith,* for appellant.

*Karlins, Grossman, Karlins, Siegel & Brill* and *Thomas H. Goodman,* for respondent.

Considered by Knutson, C. J., and Otis, Kelly, and Schultz, JJ.

HAROLD W. SCHULTZ, JUSTICE.*

This is an appeal from a judgment of the Anoka County Municipal Court. The case was tried without a jury upon stipulated facts. The issue presented on appeal is whether the sale of an automobile to the controlling shareholder of an automobile dealership is a sale "in the ordinary course of business" within the

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

meaning of a security agreement creating a security interest in the inventory of the dealership. The trial court held that it is and we affirm.

Jerry C. Collins was the president and principal shareholder of Northtown Motor Sports, Inc. (NMS), a corporation which sold new and used automobiles. NMS financed its inventory with defendant, Columbia Heights State Bank. The security agreement between NMS and defendant granted to defendant a security interest in the present and hereafter acquired inventory of NMS, as well as in all proceeds of such inventory. Prior to May 1970, NMS acquired as part of its inventory a 1966 Cadillac in which defendant held a perfected security interest under the terms of the agreement. Early in May 1970, Collins, in his individual capacity and for his own use, purchased the 1966 Cadillac. To finance the automobile, Collins secured a loan from plaintiff, Crystal State Bank. As collateral for said loan, plaintiff took and perfected a security interest in the Cadillac. Collins and NMS endorsed the cashier's check from plaintiff and deposited it in defendant's bank to the account of NMS. The title to the automobile was then registered in the name of Jerry C. Collins. There occurred a default in the earlier security agreement and defendant took possession of all of the inventory of NMS, including the Cadillac. Collins defaulted on the loan from Crystal State Bank. The two secured parties agreed to proceed with a foreclosure sale and sold the Cadillac for $1,100, which the trial court concluded was reasonable. The court also found the original price Collins paid to purchase the automobile, $1,700, was reasonable.

Counsel in their briefs take the position that there are two issues involved in this case: First, was the sale of an automobile to the controlling shareholder of an automobile dealership a sale "in the ordinary course of business" within the meaning of the security agreement between NMS and defendant, Columbia Heights State Bank? Second, does a purchase money security interest in an item of consumer goods, which has been purchased

primarily for personal use by the principal shareholder from the inventory of a corporate dealer in consumer goods, where such purchase money security interest is perfected within 10 days, have priority over the previously perfected security interest created by the dealer in that inventory?

The trial court concluded that the sale of the vehicle was in the ordinary course of business and therefore permitted under the security agreement. Thus, the court did not reach the second issue. We likewise find it unnecessary to reach this second question.

Minn. St. 336.9—306(2) provides:

"Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

The question, then, is whether the sale of the Cadillac to Collins was authorized by the security agreement between NMS and Columbia Heights State Bank. The agreement authorizes sales of inventory only in the ordinary course of business. Defendant, Columbia Heights State Bank, relies on the definition of "buyer in ordinary course of business" in the Uniform Commercial Code to interpret sales "in the ordinary course of business" as used in the security agreement.

The definition of "buyer in ordinary course of business" under Minn. St. 336.1—201(9) provides:

" 'Buyer in ordinary course of business' means a person who in good faith and without knowledge *that the sale to him is in violation of the ownership rights or security interest of a third party* in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. 'Buying' may be for cash or by exchange of other property or on secured or unsecured credit and includes receiv-

ing goods or documents of title under a preexisting contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt." (Italics supplied.)

Thus, the definition does not dispose of the question which is here to be decided, that is, whether the sale was in violation of the security agreement.

Defendant's reliance upon Taylor Motor Rental, Inc. v. Associates Discount Corp. Inc. 196 Pa. Super. 182, 173 A. 2d 688 (1961), is inappropriate. In Taylor, a secured automobile was transferred by sale between two corporations with interlocking officers. Transfer documents were signed by the same individual acting for both corporations. If the purchasing corporation was a "buyer in ordinary course of business" under U. C. C. § 336.1—201(9), it would take free of any security interest in the automobile. The court concluded that the purchasing corporation was not a buyer in the ordinary course of business. Defendant cites Taylor in support of its proposition that plaintiff was not a buyer in the ordinary course of business. As we have already pointed out, the Uniform Commercial Code definition is not helpful in disposing of the question before us.

Universal C.I.T. Credit Corp. v. Middlesboro Motor Sales, Inc. 424 S. W. 2d 409 (Ky. 1968), is more directly on point. In that case, James Sharp was owner of a corporation which held an auto dealership, and his wife was also a corporate employee and officer. The dealership had the usual wholesale financing arrangement with Universal C.I.T. Credit Corporation. Mrs. Sharp and the dealership's chief salesman, Edward Mason, had each given liens on a car to local banks. Each claimed to own his car individually. When the Sharps defaulted in their payments to Universal, a conflict arose as to the interests of Universal and the local banks. The court concluded, on the basis of Taylor, that Mrs. Sharp and Mason were not "buyer[s] in ordinary course of business" under U.C.C. § 9-307 due to their questionable behavior.

The court pointed out, however, that Taylor was not directly applicable due to the language in the Sharps' security agreement with Universal. The agreement, which is similar to the one in the instant case, provided that the company should have "liberty to exhibit and to sell each chattel in the ordinary course of trade and for the respective Principal Obligations shown in the respective statements." The court concluded that the combined effect of the provisions in the security agreement and U.C.C. § 9—306(2) was to release the lien. The court noted that the banks' evidence showed that sales to officers and employees were common and usual among car dealers in the area.

In the instant case, the sale to Collins was "in the ordinary course of business." It resembled in every material way a sale out of inventory to any retail customer. The price paid to NMS was a fair one, was paid in cash, and was deposited in NMS's account in Columbia Heights State Bank; and title was taken in Collins' name. Columbia Heights State Bank was protected by its security agreement in that it specifically retained a security interest in the proceeds of all inventory. Thus the bank was in no worse position with regard to the proceeds than it would have been had the sale been made to any retail customer of NMS.

Examples of types of transactions which were prohibited by the security agreement and were intended to be excluded by the requirement that sales be "in ordinary course" include bulk sales, transfers in satisfaction of a preexisting debt, gifts, and the like. This transaction, however, was a conventional sale, a transfer for adequate consideration of a single item of NMS's inventory. Since the lien of Columbia Heights State Bank was released by the sale out of inventory, the purchase money security interest of the Crystal State Bank, which attached upon the purchase by Collins, entitles it alone to the proceeds of the foreclosure sale.

Affirmed.