**Merle D. CHILDRESS, Appellant,**

v.

**ELY AND WALKER et al., Appellees.**

**No. 8141.**

Court of Civil Appeals of Texas, Texarkana.

Jan. 9, 1973.

Joe A. Hughey, Marshall, for appellant.

Sherman Kusin, Harkness, Friedman & Kusin, Texarkana, for appellees.

CHADICK, Chief Justice.

This is an appeal from a judgment rendered in a District Court of Bowie County, Texas, pursuant to the authority and under the terms of Tex.R.Civ.P. 652. The judgment of the trial court is affirmed.

Independently of each other, Shapirio Factors, Kapel Fabrics, Trimmings Unlimited Co., Anton Factors, Inc., and Ely and Walker sued Marvin Pevehouse, d/b/a Pinecrest Fabrics, in the 102nd District Court of Bowie County, and each party plaintiff separately was awarded a monetary recovery which included attorney fees and court costs. The only common connection between the parties bringing the suits was the circumstance that they were each represented by the same law firm and were suing the same defendant. Legal counsel for the mentioned parties caused writs of execution to issue on the separate judgments and simultaneously delivered such writs to the Sheriff of Harrison County for legal processing. The several writs were simultaneously levied by the Sheriff, according to the record; levy thereof was made on the inventory of the business establishment known as Pinecrest Fabrics, such enterprise was owned and operated by Marvin Pevehouse. In due course, sale under the executions was carried out by a qualified officer and the property levied upon was bid off to Merle D. Childress at his bid of $5,176.26.

By arrangement with the deputy sheriff conducting the execution sale, a personal check for the amount bid was written, signed and delivered to the Sheriff of Harrison County, Texas, by Betty L. Childress, wife of Merle D. Childress. Payment was stopped on the check by Mrs. Childress at her husband's direction; and, so far as the record reveals, nothing further was done toward consummation of the Sheriff's sale. After payment was stopped, counsel for the plaintiffs in execution instituted proceedings under Rule 652 and a hearing on their motion was held at which Mr. Childress and his legal counsel were present and participated. The several plaintiffs in execution were maintaining actions involving a common question of law and fact, but no order of consolidation is found in the record; it does appear, however, that all parties acquiesced in consolidation and a judgment awarding movants a joint recovery was entered. Correspondingly, without disapproval from any source, the trial court proceeding has been treated in this court as a single consolidated action. This appeal proceeds on the basis that absence from the record of an order of consolidation is immaterial, as the suit was, without objection, tried as a consolidated action. Jackson v. Wallace, 252 S.W. 745 (Tex.Com.App.1923); 3 McDonald Texas Civil Practice, Secs. 10.24.1 and 10.24.2.

Appellant Childress has briefed nine points of error, Points Two, Three, Four, Seven and Nine are grouped herein for convenience in discussion. The remaining points have been examined and, with the exception of Point Eight, are overruled without discussion. Apparent deficiencies in form of substance of several points are shunted aside as the statement under the points adequately disclose the basis of complaint.

The text of the grouped points follows, to-wit:

"Point of Error Two: The Court erred in its refusal to recognize the Uniform Commercial Code as being the law concerning inventory; specifically, Section 9 concerning secured transactions.

"Point of Error Three: The Court erred in its refusal to recognize that a lending institution may acquire a security interest in inventory that is offered for sale to the general public.

"Point of Error Four: The Court erred in its granting of a forfeiture penalty when there was no interest or title that could be conveyed to the bidder by the Court to the judgment debtor.

"Point of Error Seven: The Court erred in finding the value of said inventory to be $8,500.00 when, in fact, there is a first lien held by The First National Bank of Marshall, Harrison County, Texas, in the amount of $5,176.26. That if, in fact, a penalty was justified, it should be based upon the difference between the above figures, or, a total of $3,323.74.

"Point of Error Nine: The Court erred in determining the outcome of the hearing prior to the presentation of any evidence."

On controverted evidence the trial judge found the property sold under execution had a cash market value of $8,500.00. Counsel for Childress introduced a *Financing Statement* showing on its face as *Debtor* Pinecrest Fabric Shop, and as *Secured Party* The First National Bank, Marshall, Texas, the maturity date as (blank), filing of such instrument with the Secretary of State as March 10, 1971, and the number assigned the instrument by the filing office. The *Financing Statement* recited that it covered as collateral all present and future inventory, including proceeds therefrom.

■ A diligent search and repeated readings of the statement of facts has failed to discover any evidence of the amount of money the Fabric Shop owed to the bank at the time execution was levied on the store's inventory. Proof of the amount owed to the bank was indispensable to a calculation of the value of the property sold after all encumbrances are deduct-

ed. A defaulting bidder is liable to the plaintiff in execution for a penalty of 20% of the net value of property bid off at execution sale under the provisions of Rule 652. Net value is determined by deducting all encumbrances from gross value. Shanley v. York, 118 S.W. 146 (Tex.Civ.App. 1909, no writ); Borden v. Fahey, 54 Tex. Civ.App. 214, 120 S.W. 564 (1909, writ ref'd); Gilliland v. Cardinal, 44 S.W.2d 434 (Tex.Civ.App.Amarillo 1931, no writ); Rule 652, supra. Proof of the amount of the encumbrance was defensive in nature, so Mr. Childress had the burden of proving the amount of the encumbrance indicated by the *Financing Statement* and failed to do so. The trial judge determined the property's value from the only facts proven.

■ Early in the proceedings, the trial judge expressed doubt that goods daily exposed for sale could be validly mortgaged. Counsel for Mr. Childress persisted in efforts to state his views of the law in this regard. After the judge made it clear that the court was not interested in taking time to hear such argument, counsel again adverted to the subject and the judge stated:

"Well, the court is not paying any attention to it, because the court's mind is already made up on that."

Even if the trial court entertained an erroneous conception of the law in this field, no harm is shown, because of the failure of proof previously discussed. For clarification in this connection, it is worth commenting that goods daily exposed for sale, as the store's inventory was in this case, may be the subject of a valid security agreement. An *inventory* is included in the definition of goods (Tex.Bus. & Commerce Code, Sec. 9.105, V.T.C.A.), and as there is no prohibition against it, may become collateral for a security interest. The former statutory prohibition against mortgaging a stock of goods daily exposed for sale was repealed in 1966. A buyer of an inventory article in the ordinary course

of business, with exceptions noted in Section 9.307, takes free of any security interests created by the seller.*

■ Lastly, in connection with this group of points, the evidence produced before the trial judge showed that Pinecrest Fabric Shop's inventory had a value ranging between $7,000.00 and $10,000.00, and as mentioned, the inventory secured indebtedness to the bank is an unknown amount. Appellant Childress' brief admits that he was aware of the bank's security interest in the inventory at the time he made his bid. Since the record does not show the amount of any encumbrance, it furnishes no basis for determining the value of the equity of redemption that was up for bids. There is no proof in the record that the equity of redemption was valueless or that no title or interest in the inventory would vest in a successful bidder.

■ The purport of Point of Error Eight is that the trial court erred in finding that Mr. Childress was in default on his bid because he was not issued a "sheriff's bill of sale or any other instrument that conveyed any interest whatsoever to Merle D. Childress." It is undisputed that payment was stopped, at Mr. Childress' direction, on the check he tendered in payment of his successful bid. When a bidder defaults on his bid, the levying officer is required by Tex.R.Civ.P. 652 to proceed with the sale the same day if time permits, if not, to readvertize and proceed as in the first instance. Impliedly, the officer is vested with authority to declare that a default has occurred. There is no court rule or statutory requirement that the levying officer tender a bill of sale to a successful bidder or that he issue a successful bidder a memorandum evidencing a sale; on the contrary, he is required by Tex.R. Civ.P. 653 to duly make a return of the writ of execution, signed by him officially, stating concisely "what he has done in pursuance of the requirements of the writ and of the law." No requirement is made that the officer tender the defaulting bidder an instrument transferring title as a prerequisite to declaring or reporting a default. There is no basis in the express or implied requirements of the law for holding that failure to make such tender by such officer excuses a default on the part of the successful bidder. The point in this regard is overruled.

No reversible error is shown and there is no alternative to affirmance of the trial court judgment. It is so ordered. In order to clarify and condense, the original opinion filed January 9, 1973, is withdrawn and this substituted for it.

RAY, J., did not participate in disposition of the case.

---

* To avoid implications that might arise from the use of traditional terms, the Tex.Bus. & Commerce Code section on *Secured Transactions* is written largely in terms that have no common law of statutory roots. To replace such terms as *chattel mortgage, conditional sale, assignment of accounts receivable, trust receipts*, etc., this article of the Code substitutes the general term *Security Agreement*. For such terms as *mortgagor* and *mortgagee, conditional vendee* and *conditional vendor*, etc., the Code article substitutes *debtor* and *secured party*. Property subject to a *security agreement* is termed *collateral*. The interest in the collateral, which is conveyed by the debtor to the secured party is a *security interest*. Terms used in the Code are defined and have the meaning statutorily attributed to them.