**MOREY MACHINERY CO., INC.,**
Plaintiff-Appellee,

v.

**GREAT WESTERN INDUSTRIAL MACHINERY COMPANY,**
Defendant-Appellant.

No. 73–3881

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1975.

Robert E. Venney, Miami, Fla., for defendant-appellant.

Jose R. Garcia-Pedrosa, Miami, Fla., for plaintiff-appellee.

Before RIVES, GEWIN and GOLD-BERG, Circuit Judges.

PER CURIAM:

This diversity case, from Florida, is controlled by the Uniform Commercial Code. We must pass on whether the plaintiff's filing with the Florida Secretary of State was sufficient to perfect a security interest in lathes that it sold and whether the subsequent buyer of these lathes was a buyer in the ordinary course of business.

Plaintiff Morey Machinery Company [Morey] is a New York dealer in industrial machinery. On or about July 25, 1967 Morey sold 36 lathes to Malina Machinery Corporation [Malina], a Florida machinery dealer. In exchange for the four machines which are the subject of this case, plaintiff took four 180-day promissory notes. Morey then prepared a financing statement for each machine, which contained a specific description of the machine, as well as a stamped overprint which read:

> The Documentary Stamps Required By Chapter 201, Florida Statutes, Have Been Placed On The Promissory Instruments *Secured Hereby,* And Will Be Placed On Any Additional And Similar Instrument That May Be So Secured.

(Emphasis Added).

This statement was signed by both the debtor and the secured party on or before July 21, 1967. The subject machines were released by Morey to Malina on July 27, 1967 and the statement which both described the machinery and contained the above stamp was filed prior to August 7, 1967.

On July 25, 1967, either on Malina's date of purchase or within days of it, and before it took possession of the machines, Malina sold the four lathes to defendant Great Western Machinery Company [Great Western], another machinery dealer. The sales price for each machine was $2,928.86, the same price that Morey charged Malina.[1]

---

1. Since the terms of payment were $2,512.92 in cash and a 60 day note for the rest, some advantage did accrue to Malina from the sale.

In addition, the district court found, and the record verifies:

At the time of the sale of the subject machines from Plaintiff to Malina, and from Malina to Defendant, Mr. Jack E. Golsen was acting, for all intents and purposes, as the chief executive officer of Defendant. At such time, Mr. Golsen was also the chief executive officer of a third company dealing in industrial machines, Summit Machinery Company, in which Mr. David Malina, the President of Malina Machinery Corporation, owned between one-third and one-half of the outstanding shares. During mid-and late 1967, Mr. Golsen and Mr. Malina transacted business together in Europe on behalf of Summit Machinery Corporation.

On or before July 25, 1967, Mr. Golsen was informed by Mr. Malina about Plaintiff's sale of the machines to Malina, about the terms of payment of such transaction, and about Plaintiff's claim of a security interest in each of said machines.

Malina failed to pay Morey for the machines, and, filed an involuntary petition in bankruptcy on January 30, 1968. Great Western refused to pay Morey for the machines as well. After a variety of negotiations between Morey and Great Western, Morey filed this suit, based on its asserted security interest in the lathes, on December 28, 1972, asking for the value of the machines plus interest. The district court entered judgment for the plaintiff for the sum of $15,569.05. Defendant appeals. We affirm the district court's judgment.

■ Defendant raises four issues which merit discussion. First, Great Western claims that a three year statute of limitations applies to this action and that it was therefore brought too late.

Fla.Stat.Ann. § 95.11 reads in relevant part:

Limitations upon actions other than for the recovery of real property.—Actions other than those for the recovery of real property can only be commenced as follows:

(3) Within five years.—an action upon any contract, obligation or liability founded upon an instrument of writing not under seal.

(5) Within three years.—

(c) An action for taking, detaining or injuring any goods or chattels, including actions for the specific recovery of personal property;

The plaintiff's action in the instant case is based upon the obligations incurred in the instruments of writing filed with the Florida Secretary of State. The basis of Morey's right to sue and the basis of Great Western's obligations are very specifically reliant upon the terms of the UCC filing, in conjunction with the UCC provisions relating to security interests and third party obligations. The action is not based merely on some equitable conversion theory. See Webb v. Powell, 5 Cir. 1937, 87 F.2d 983; American Cyanamid Co. v. Wilson and Toomer Fertilizer Co., 5 Cir. 1931, 51 F.2d 665. Thus the five year statute of limitations is applicable to the case, and the plaintiff brought its action within the proper limits.

Defendant next contends that the instrument signed by Morey and Malina was merely a financing statement, and not a security agreement, and thus that Morey has no security interest in the lathes.

Fla.Stat.Ann. § 679.203 reads in relevant part:

[A] security interest is not enforcible against the debtor or third parties unless:

(b) The debtor has signed a security agreement which contains a description of the collateral . . .

A "security agreement" is defined in § 679.105 as "an agreement which creates or provides for a security interest."

■ There is nothing in either of these sections which requires that the financing statement be a separate piece

of paper from the security agreement, or that any particular words be used to evidence the security interest. The agreement must merely *provide* for a security interest, so that a third party might know that such an interest exists in a particular piece of property. In the instant case such a provision was made by the usage in the overprint of the wording "Secured Hereby". In its other respects the document meets the requirements of a security agreement—it describes the collateral and it is signed by the debtor.

 Great Western argues additionally that Morey's security interest in the lathes was not perfected at the time of Great Western's purchase. There is clearly no merit in this assertion. Florida Stat.Ann. § 679.302 provides that a financing statement need not be filed to perfect a security interest in collateral which is still in the possession of the secured party. The lathes were transferred to Malina on July 27; until that time they were under the control of Morey. Moreover, as the district court found, and as is supported by the record, Great Western had actual notice of Morey's security interest from the time of its purchase.

Great Western relies finally, then, upon Fla.Stat.Ann. § 679.307(1) to protect it from Morey's security interest. It reads in relevant part:

> A buyer in the ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

The definition of "buyer in the ordinary course" given in Fla.Stat.Ann. § 671.201(9) is:

> [A] person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods . . .

Great Western is not a buyer in the ordinary course. The mutual business relations between the seller and buyer, the quick sale to Great Western and the terms of that sale do not evidence the arm's length transaction which occurs between a seller and a buyer in the ordinary course of business. *See* Taylor Motor Rental, Inc. v. Associates Discount Corp., 1961, 196 Pa.Super. 182, 173 A.2d 688; *Cf.,* Unico v. Owen, 1967, 50 N.J. 101, 232 A.2d 405.

Since all of Great Western's defenses are without legal support, Morey prevails.

Affirmed.