**In re DEL TEX CORPORATION,**
**Debtor.**

**FIRST STATE BANK OF CORPUS**
**CHRISTI**

v.

**DEL TEX CORPORATION and John W.**
**Cliff, Jr., Trustee.**

**Bankruptcy No. 5–81–00846 E.**
**Adv. No. 5–82–0174 E.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

May 25, 1983.

**404**

Keith Baker, Law Offices of Bruce Waitz, P.C., San Antonio, Tex., for debtor/defendant.

Marvin J. Wanner, Sorrell, Anderson, Sorrell & Crachere, Corpus Christi, Tex., for First State Bank of Corpus Christi, plaintiff.

John W. Cliff, Jr., Trustee, Smith & Cliff, P.C., Odessa, Tex., for trustee.

## MEMORANDUM OPINION

JOSEPH C. ELLIOTT, Bankruptcy Judge.

This case comes before the Court on the Complaint to Lift Stay filed by First State Bank of Corpus Christi (hereinafter referred to as the Bank). A hearing on the merits of the Bank's Complaint was held, at which time the Court took the matter under advisement on the issue of whether the Bank retained a perfected security interest against the Debtor, Del Tex Corporation (hereinafter referred to as Del Tex).[1]

The Bank claims it is a secured creditor of Del Tex by virtue of a financing statement filed on October 30, 1979 in favor of the Bank for a $680,000.00 loan made to a Debtor, South Texas Candy and Tobacco Company, (hereinafter referred to as "South Texas"), an affiliated entity of Del Tex which is presently proceeding in bankruptcy within the Southern District of Texas. The relationship between the two debtor corporations arises from the fact that between July 1, 1981 and September 3, 1982 the two corporations were owned by the same parent company, Solatrex Industries, Inc. (hereinafter referred to as Solatrex). On July 1, 1981, Solatrex purchased South

Texas following a discussion of the acquisition with an official of the Bank. At the meeting, Mr. Martin Eckoff, President of Solatrex, was informed of the Bank's security interest and was required to execute a personal guarantee and to take the assets of South Texas subject to the Bank's security interest. The security agreement which existed between the Bank and South Texas described the collateral as "[a]ll inventory, merchandise and accounts receivable, fixed assets, equipment" and certain vehicles specified in a list attached to the security agreement. The agreement also provided that the Debtor would not sell the collateral without the Bank's consent except for goods identified as inventory.

Solatrex managed the operation of South Texas as well as the operation of Del Tex Corporation and on July 8, 1981 caused an inventory transfer from South Texas to Del Tex with an approximate value of $20,000.00. Other transfers of merchandise from the South Texas warehouse to Del Tex took place over succeeding months. The Bank claims the amount due South Texas from Del Tex with respect to the inventory transferred is $60,533.86.

According to the testimony, when Del Tex and South Texas dealt with each other, the method of accounting for merchandise shipped from the South Texas warehouse changed and no longer followed regular procedures. Instead of a "purchasing ticket" being filled out for goods shipped from the warehouse, a list of the goods taken was kept by Del Tex and later a receivable was entered on the books of South Texas in an amount equal to the cost of the goods to South Texas. The dollar amount of each transfer was shown to be much larger than was customary for a sale to South Texas' other customers. Furthermore, although payment terms were specified for the transfers, the evidence shows Del Tex did not abide by them, but South Texas continued to transfer goods.

A preliminary matter before the Court is the Del Tex objection to evidence offered

---

1. This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law pursuant to Rule 752 of the Rules of Bankruptcy Procedure.

by the Bank which shows the transfers from South Texas were not in the ordinary course of business. Del Tex asserts the Plaintiff Bank's pleadings are insufficient to raise any legal issues concerning Chapter 9 of the Texas Business and Commerce Code and the Bank should be limited to relief under Chapter 6 which is specifically pled in its Original Complaint for Relief from Stay. The Court has reviewed the Bank's original pleading and, although it fails to specifically plead for relief under Chapter 9 of the Texas Business and Commerce Code, the facts and allegations are set out in sufficient detail to reasonably apprise an adverse party that the provisions of Chapter 9 would be necessarily relied upon. The Court cannot find Del Tex has been surprised and prejudiced by the allowance of evidence in support of relief under Chapter 9. The Court grants leave to the Plaintiff Bank to amend its pleadings so as to conform to the evidence presented and a separate Order shall be entered accordingly. Fed.R.Civ.P. 15(b).

The issue before the Court is whether the Bank's security interest over South Texas' inventory survived the purported sale to Del Tex and is enforceable against Del Tex. The Bank asserts the transfers did not result in its losing the security interest which covered the goods, but instead its security interest followed the goods into the hands of Del Tex. Since its security interest survived the transfer, the Bank claims it is a secured creditor of Del Tex. Del Tex's position is that it received the goods from South Texas unencumbered by any security interest of the Bank. Both sides rely upon somewhat related sections of Article 9 to support their arguments, but take different approaches in applying the sections. *See:* Tex.Bus. & Comm.Code Ann. §§ 9.306(b) and 9.307(a) (Tex.U.C.C.) (Vernon Supp. 1982–1983). The sections are related in a general sense because each deals with the effect a sale or transfer of collateral has upon the overlying security interest.

The Bank argues that Del Tex has failed to satisfy the "buyer in ordinary course" requirement of Section 9.307(a) and, therefore, its security interest was not avoided

upon transfer as permitted under that section. Tex.Bus. & Comm.Code Ann. § 9.307(a) (Tex.U.C.C.) (Vernon Supp.1982–1983). Section 9.307(a) provides:

(a) A buyer in ordinary course of business (Subdivision (9) of Section 1.201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

The purpose of the section is to describe when a buyer of goods takes them free of any perfected security interest which might encumber them. *See Childress v. Ely and Walker,* 489 S.W.2d 628 (Tex.Civ.App., Texarkana, 1973, no writ).

It is the Bank's position that Del Tex does not qualify as a buyer in ordinary course of business as defined by Section 1.201(9). Tex.Bus. & Comm.Code Ann. § 1.201(9) (Tex.U.C.C.) (Vernon Supp.1982–1983). That Section 1.201(9) of the Code defines such a buyer as follows:

(9) "Buyer in ordinary course of business" means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. All persons who sell minerals or the like (including oil and gas) at wellhead or minehead shall be deemed to be persons in the business of selling goods of that kind. "Buying" may be for cash or by exchange of property or on secured or unsecured credit and includes receiving goods or documents of title under a preexisting contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt.

The Bank contends Del Tex cannot claim the status because it was not acting in good faith when it participated in the transfers with South Texas and that the transfers

cannot be considered as sales in the ordinary course of business.

Del Tex answers the Bank by arguing Section 9.307(a) is inapplicable under the facts of this case. Del Tex's position is that before Section 9.307(a) is looked to, the Court must determine the applicability of Section 9.306(b) to the facts before the Court. Tex.Bus. & Comm.Code Ann. § 9.306(b) (Tex.U.C.C.) (Vernon Supp.1982–1983). Section 9.306(b) provides:

(b) Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

Del Tex argues that the question of whether it is a "buyer in the ordinary course of business" is not the threshold issue to be addressed. Indeed, the Comment to Section 9.307 states that the section only applies to unauthorized sales and not those authorized by the security agreement, in which case Section 9.306 applies. *Id.* § 9.307 at Comment 2. Since the security agreement between the Bank and South Texas contains an authorization clause regarding the sale of inventory, the Court must initially agree with Del Tex that a Section 9.307 inquiry is premature. The Del Tex argument that the mere presence of the authorization clause in the security agreement renders Section 9.306(b) applicable nevertheless begs the question of whether the sales under consideration were truly and, in fact, authorized. The Court finds from the analysis which follows that the authorization issue is resolved by deciding whether the purported sales were in the ordinary course of business.

As noted, Del Tex rests its case upon § 9.306. Tex.Bus. & Comm.Code Ann. § 9.306 (Tex.U.C.C.) (Vernon Supp.1982–1983). The sale in ordinary course question is reached under Section 9.306 by carrying the Del Tex legal analysis several steps further than attempted by Del Tex. Section 9.306 provides, as a general proposition, that a security interest follows its collateral upon a sale or transfer of the collateral unless the secured party agreed to the sale or transfer either by the terms of the security agreement or through some other means. Tex.Bus. & Comm.Code Ann. § 9.306(b) (Tex.U.C.C.) (Vernon Supp.1982–1983). Therefore, should there be a security agreement, Section 9.306 requires that it be referred to at the outset. *Id.* As previously noted, the security agreement between the Bank and South Texas grants authority to South Texas to sell its inventory which the Bank had designated as part of its collateral under the security agreement. If the Court were somehow constrained to halt its inquiry at this point, as Del Tex would have it, unquestionably the Court could be obliged under Section 9.306 to hold in favor of Del Tex and find the Bank's security interest did not follow the goods upon their transfer. The Court, however, is not so limited in its inquiry. This case deserves a more exhaustive inquiry than that pursued by Del Tex. Certainly, the terms of the security agreement must be looked to, particularly the usage and meaning of the term "inventory", which the Court finds to be the chief operative term in the grant of authority.

Since there is no definition of the term "inventory" in the security agreement, it is reasonable for the Court to refer to the Code for guidance and apply the standards it sets forth as though they were explicitly relied upon by the parties. Indeed, it is assumed that parties entering into contracts within the purview of the Code do so in reference to its purposes and policies, and with the understanding that the effect of its provisions may be altered by agreement. Tex.Bus. & Comm.Code Ann. § 1.102 (Tex.U.C.C.) (Vernon Supp.1982–1983); *Pacific Products, Inc. v. Great Western Plywood, Ltd.*, 528 S.W.2d 286, 296 (Tex.Civ.App.—Ft. Worth, 1975, no writ). The Uniform Commercial Code treats goods as "inventory" if they are "... held by a person who holds them for sale or lease or to be furnished under contracts of service..." Tex. Bus. & Comm.Code Ann. § 9.109(4) (Tex.U.

C.C.) (Vernon Supp.1982–1983). The Comment to Section 9.109 stresses, however, that "implicit in the definition is the criterion that the prospective sale is in the ordinary course of business." *Id.* Comment 3. It follows then that if the sale is not in the ordinary course of business, the goods transferred are not, by definition, inventory, and consequently the transfer falls outside the scope of the grant of authority. Del Tex apparently takes the position that if authority has been given the borrower to sell inventory, then whether the sale was in the ordinary course of the borrower's business is unimportant. The Court, as should be obvious from the foregoing, disagrees. The grant of authority under consideration does not expressly indicate the inapplicability of the sale in ordinary course standard. In the absence of such a qualification, the Court finds it was within the reasonable contemplation of the parties that the authority would extend only to those sales within the ordinary course of South Texas' business.

■ Having concluded that the core issue to the case is whether the transfers to Del Tex qualify as sales in the ordinary course of business, the Court has arrived at the point when it must consider the facts of the case and, using the facts, resolve the issue. Actually, whether a sale is in the ordinary course of business is a mixed question of fact and law and may only be resolved by resorting to information concerning all the circumstances surrounding the purported sale. *Associates Discount Corp. v. Rattan Chevrolet, Inc.,* 462 S.W.2d 546 (Tex.1970). The general import of the testimony and evidence presented at trial draws the conclusion that the successive transfers of goods between the affiliated entities, Del Tex and South Texas, were not sales in the ordinary course of South Texas' business. A prominent factor supporting the conclusion is Solatrex's failure to maintain the separateness of the corporate entities due to the indiscriminate manner in which Solatrex exercised its management and control over their affairs. The Court finds the nature of the management has reached the point that they cannot be considered to be dealing at arms length with each other. The evidence shows that ordinary accounting procedures for merchandise being shipped from South Texas warehouses were suspended when the transaction was with Del Tex. Also, compensation for South Texas was accomplished by the entry of a receivable on the South Texas books and since all goods were transferred at South Texas' cost and on credit terms never complied with by Del Tex or enforced by South Texas, the only party to the transfer who derived any benefit was Del Tex. Furthermore, the quantity of goods involved in the transfers was unusually large to the extent that South Texas' inventory was depleted to a level rendering it unable to fill pending orders of its customers. The Court concludes that Solatrex managed the two companies as a single entity and, therefore, the transfers which occurred cannot be treated as sales in the ordinary course of business, but merely a shifting of assets between non-distinct entities.

Since the transfers were not arms length transactions, there were not sales of "inventory" per se, but transfers of goods which were collateral. It follows that the provision of the security agreement which Del Tex relies upon as providing South Texas with authority to sell inventory does not extend to the transfers in question. Such provisions contemplate a sale in the ordinary course of business. Tex.Bus. & Comm. Code Ann. § 1.102 (Tex.U.C.C.) (Vernon Supp.1982–1983). Therefore, it is the decision of this Court that Del Tex received the merchandise from South Texas encumbered with the security interest of First State Bank of Corpus Christi. *See* Tex.Bus. & Comm.Code Ann. § 9.306(b) (Tex.U.C.C.) (Vernon Supp.1982–1983). Furthermore, on the basis of the Court's ruling that the sales were not in the ordinary course of business, Del Tex does not achieve, pursuant to Section 1.201(9), the status of a buyer in the ordinary course of business which would enable it to avoid the security interest under Section 9.307. Tex.Bus. & Comm.Code Ann. §§ 1.201(9) and 9.307 (Tex.U.C.C.) (Vernon Supp.1982–1983). *See Associates*

**408**

*Discount Corp. v. Rattan Chevrolet, Inc.,* 462 S.W.2d 546 (Tex.1970); *International Harvester Co. v. Glendenning,* 505 S.W.2d 320 (Tex.Civ.App., Dallas, 1974, no writ); *Taylor Motor Rental, Inc. v. Associates Discount Corp., Inc.,* 196 Pa.Super. 182, 173 A.2d 688 (1961). Accordingly, the Plaintiff, First State Bank of Corpus Christi, shall be considered a secured creditor of the Debtor, Del Tex Corporation, in these Chapter 11 proceedings in the amount of $60,533.86.