In re Charles B. DETTWILLER and Mary M. Dettwiler, Debtors.

**BANK ONE, PORTSMOUTH, N.A., Plaintiff,**

v.

**Charles B. DETTWILLER, Mary M. Dettwiler, Kubota Tractor Corp., Defendants.**

Bankruptcy No. 1–92–00139.
Adv. No. 1–92–0169.

United States Bankruptcy Court, S.D. Ohio, W.D.

July 1, 1993.

John C. Greiner, and Robert M. Edington, Cincinnati, OH, for defendant Kubota.

Rick D. DeBlasis, Cincinnati, OH, for plaintiff.

J.B. Marshall, Jr., Portsmouth, OH, for Dettwillers.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

BURTON PERLMAN, Chief Judge.

Before the court is an adversary proceeding filed by plaintiff Bank One against Charles B. and Mary Dettwiller, joint debtors in a related Chapter 11 bankruptcy case (hereafter "debtors"), and Kubota Tractor Company ("Kubota"), debtors and Kubota being co-defendants. Plaintiff asserts in its complaint that its purchase money security interest in a tractor ("the subject tractor") purchased by debtors and repossessed by Kubota is the best and only lien pursuant to Ohio Revised Code § 1309.31(B). In its answer and cross-claim, Kubota disputes plaintiff's assertion and contends that its position as a floor plan financier is superior to that of plaintiff. Kubota filed the motion for summary judgment which is here before the court, and a memorandum in support of its motion. Plaintiff then filed a memorandum in opposition to the motion, and Kubota filed a response to plaintiff's memorandum. Oral argument was heard on the motion.[1]

In support of its motion, Kubota offers the deposition of Charles and Mary Dettwiller taken by Kubota. Also furnished by Kubota in support of its motion were several exhibits, including the Dealer Sales and Service Agreement executed between Kubota and debtors; an amendment to that agreement; affidavits by Charles Dettwiller and Thomas Kessler, Kubota's Credit Manager; and a short excerpt from Kubota's answers to interrogatories put forth by plaintiff. The record also includes a copy of plaintiff's financing statement and security agreement with debtors, as well as notices of default sent by Kubota to debtors. Plaintiff has offered no evidentiary material in its opposition to the motion.

This court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. §§ 157(b)(2)(A) and (K).

The following facts appear to be undisputed. Debtors and Charles Dettwiller, Jr., debtors' son, presently own all the shares of Dettwiller's Ag Services, Inc. (the "Dealership"), with Charles owning 95% and his son, Charles Jr. owning 5%.[2] Charles Dettwiller, Sr. is president of the Dealership, his wife Mary is secretary/treasurer, and Charles Jr. is the director of the Dealership. The Dealership is in the business of selling, among other things, farm supplies and equipment. The Dealership first began selling equipment

---

1. Bank One and Kubota filed claims and cross-claims respectively asserting nondischargeability of the debt arising out of Debtors' alleged default on the Tractor loan. The parties have presented an agreed entry pursuant to which Debtors acknowledge that this debt is nondischargeable as to both Bank One and Kubota. That entry has no bearing on this decision.

2. The Dealership is also a Chapter 11 debtor whose case is consolidated with this one.

manufactured by Kubota in late 1987 or early 1988, pursuant to a floor financing arrangement plan embodied in Dealer Sales and Service Agreement ("the Agreement") entered into between the Dealership and Kubota January 8, 1987. The Agreement provided Kubota with a security interest in all equipment and inventory maintained on the Dealership's premises. Kubota properly perfected its security interest by filing financing statements with the Secretary of State and the Scioto County Recorder's Office. According to an affidavit of Thomas Kessler, the Kubota Credit Manager, the Agreement was amended in November, 1987 to include, among other items, farm tractors—the so-called Kubota B, L, and M series tractors.

Pursuant to the Agreement, all equipment was delivered to the Dealership's premises and remained there until sold. A Kubota representative visited the Dealership approximately every month to record existing equipment and inventory, as well as to verify documentation of sales. In November, 1990, Charles B. Dettwiller purchased a 1989 Model M Kubota Farm Tractor, the subject of the present controversy, from the Dealership. He intended to lease the tractor to area farmers and had discussed this course of action with Kubota's representative. He paid $33,000 for the tractor, a price which was five or six thousand dollars less than the retail value of that item. He paid 25% of the purchase price from his own funds to Kubota and obtained a loan from plaintiff for the remainder. The purchase proceeds went directly into the Dealership's account. In connection with the sale, debtors executed a promissory note in favor of plaintiff and a security agreement granting plaintiff a security interest in the tractor. Plaintiff subsequently perfected its interest. The tractor remained on the premises of the Dealership. The Dealership did not inform Kubota of the sale.

Kubota, on September 3, 1991, notified the Dealership that it was in violation of the Agreement. On September 19, 1991, Kubota repossessed all inventory and equipment on the Dealership premises, including the tractor. After debtors filed for bankruptcy, plaintiff filed this suit asserting that its security interest in the tractor was superior to that of Kubota.

Summary judgment is appropriate where there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (made applicable in bankruptcy pursuant to Fed.R.Bankr.P. 7056). The court must therefore consider, first, whether there are issues of fact which must be resolved before judgment may be rendered, and if there are none, whether movant is entitled to judgment as a matter of law.

In support of its motion, Kubota urges, first, that it had a security interest in the subject tractor, second, that only a buyer in the ordinary course of business could take the tractor free of that security interest, and, third, the sale to Charles B. Dettwiller was not in the ordinary course of business. The subsequent security interest of plaintiff in the subject tractor, argues Kubota, is therefore subordinated to that of Kubota.

In opposition plaintiff contends that the subject tractor was not subject to the security interest created by the Agreement, that the record does not establish that the sale to Charles B. Dettwiller was not in the ordinary course of business (or that the sale was not authorized), and, finally, that material issues of fact remain unresolved.

■ 1. Kubota's Security Interest. The first issue to resolve is whether the Agreement extends to the subject tractor. As proof that the tractor is included within that Agreement, Kubota has submitted an amendment to the Agreement which expressly refers to the type of tractor at issue here as a product covered by the Agreement. The affidavit of Thomas Kessler, Kubota's credit manager, is submitted by Kubota as proof of the amendment to the Agreement. No contrary evidence has been offered, and we therefore conclude that there is no genuine issue on this question, and Kubota had a security interest in the subject tractor by virtue of the Agreement.

Plaintiff argues that even if the Agreement extends to the tractor, the tractor is nevertheless not covered by the Agreement, since the Agreement grants Kubota a security interest only in those items "sold" to the Dealership, which plaintiff contends did not occur here. Disposition of this argument requires a brief explanation of the Agreement. The Agreement embodies a floor plan financing arrangement. Floor planning is a method of inventory financing whereby a dealer receives financing for inventory purchases in return for granting a security interest in the inventory acquired. *Bluegrass Ford–Mercury, Inc. v. Farmers Nat'l Bank*, 942 F.2d 381, 382 (6th Cir.1991). Typically, a floor planning arrangement involves three parties: a manufacturer, a dealer, and a bank. In a three way arrangement, the bank pays the manufacturer for the good, the dealer grants the bank a security agreement in the good, and the dealer promises to remit the proceeds of the good's sale to the bank. *Id.* at 382–83.

In the instant proceeding, the floor plan agreement only includes two parties, Kubota and the Dealership. While plaintiff argues that the tractor must be sold to be covered under the Agreement, this position is without merit. The subject tractor is covered by the Agreement because Kubota's security interest attached pursuant to Ohio Revised Code § 1309.14(A). Three elements are necessary for attachment to occur. First, the debtor must sign a security agreement describing the collateral. Second, the secured party must give value. Third, the debtor must have rights in the collateral. O.R.C. § 1309.14(A). The court in *In re B & B Marine Sales & Service*, 133 B.R. 99, 101 (Bankr.N.D.Ohio 1991) addressed the issue of inclusion in relation to a floor planning agreement. There, a creditor of a boat dealer claimed that the floor plan lender did not have an enforceable security interest in the dealer's inventory because the floor plan lender's interest in the collateral had not attached. The court rejected that claim upon finding the requisite three elements of attachment present, finding that there was a signed security agreement, that the debtor had rights in

the collateral through its right to resell the financed boats, and that the floor plan financier had given value by paying the manufacturer for the specific boats delivered to the dealer. *Id.* at 102. The court therefore held the item in question to be subject to the floor plan.

Here, Kubota, as both manufacturer and financier, satisfies the requirements for coverage of the tractor by the floor plan. Kubota obtained a security agreement signed by debtors which adequately described the tractor. Moreover, Kubota gave value in that it delivered the tractor to the Dealership. As was the case in *B & B Marine Sales & Service*, therefore, the Dealership in the instant proceeding obtained rights in the collateral by virtue of its right to resell the tractor, such rights in the collateral not being dependent upon actual sale. We therefore hold that plaintiff's position that the tractor must be sold to be covered by the Agreement is unsound.

**2. Was Sale in Ordinary Course?** There is no dispute between the parties that in accordance with the terms of the Agreement, a buyer in the ordinary course of business takes free of the security interest of Kubota. Where the parties part company is on the issue of whether the sale to Charles B. Dettwiller was in the ordinary course of business. Plaintiff contends that issues of fact remain before that issue can be resolved. Kubota, however, argues that the present record is sufficient to establish that the sale was not in the ordinary course of business. It says that this record establishes that Charles B. Dettwiller did not act in good faith, that he knew that a sale without remitting the proceeds to Kubota violated the Agreement.

The Ohio Revised Code provides: "A buyer in the ordinary course of business ... takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." O.R.C. § 1309.-26(A). A buyer in the ordinary course is "a person who, in good faith and without knowledge that the sale to him is in viola-

tion of the ownership rights or security interest of a third party in the goods, buys in the ordinary course from a person in the business of selling goods of that kind.... " O.R.C. § 1301.01(I) (This section is identical to § 1–201(9) of the Uniform Commercial Code, hereafter the "U.C.C.").

The Ohio Revised Code employs the U.C.C. definition of good faith as "honesty in fact in the conduct or transaction concerned." O.R.C. § 1301.01(S) (tracking U.C.C. § 1–201(19)). The parameters of good faith are not clearly delineated by the case law. *See Martin Marietta Corp. v. N.J. Nat'l Bank,* 612 F.2d 745 (3d Cir.1979) (authorities split between subjective and objective good faith and whether the stricter definition of Article 2 applies to Article 9). Nevertheless, good faith is one of those concepts which must be determined according to the facts of each particular case. In this case, buyers such as debtors herein cannot be said to have bought in good faith when they purchased from their own dealership at a discount; failed to pay Kubota any of the proceeds of the sale; failed to notify Kubota of the sale; and failed to remove the tractor from the lot after the purchase.

In cases similar to this one, several courts have held that principals purchasing goods from corporations they control are not buyers in the ordinary course of business. *See, e.g., In re Palmer,* 103 B.R. 348 (Bankr.M.D.Ga.1989) (principal bought boats from own inventory for greater than usual discount and failed to remit downpayment to dealership); *Transamerica Comm. Finance Corp. v. Union Bank & Trust Co.,* 584 So.2d 1299 (Ala.1991) (debtor selling vehicles to related business enti-

ty controlled by debtor knew failure to remit proceeds violated security agreement with floor plan financier); *Merchants and Planters Bank and Trust Co. of Arkadelphia v. Phoenix Housing Systems, Inc.,* 21 Ark.App. 153, 729 S.W.2d 433 (1987) (suspicious circumstances included unusually large downpayment by principal of modular home seller for home, manufacturers' delivery of certificate of origin before completion of home, and manufacturer's refunding of purchase price to principal); *cf. In re Del Tex Corp.,* 32 B.R. 403, 407 (Bankr.M.D.Ga.1983) (sale not at arms' length and therefore not in ordinary course where transaction between buyer and seller involved affiliated corporations). Moreover, debtors' statement in their deposition that they intended to pay Kubota for the tractor does little to sway our conclusion that their purchase of the tractor was not done in good faith. *Transamerica,* 584 So.2d at 1307.[3]

In sum, Charles B. Dettwiller was not a buyer in the ordinary course of business. The lien of Kubota, by negative implication, is thus not extinguished upon the sale. Since Kubota's lien was filed earlier than plaintiff's, Kubota's lien prevails over that of plaintiff according to the well established precept of U.C.C. law that earlier filed liens take precedence over those filed later. O.R.C. § 1309.31(4)(E)(1) (tracking U.C.C. § 9–312(5)(a)).

Plaintiff argues that even if Kubota possesses a perfected security interest in the tractor, plaintiff's security interest should be given priority over that of Kubota. Plaintiff contends that Kubota's security interest was nullified pursuant to O.R.C. § 1309.25(B)[4] in that Kubota authorized

---

**3.** We also express doubt as to whether Bank One even has standing to invoke debtors' putative buyer in the ordinary course status. Several courts have held that banks which finance buyers do not themselves qualify as buyers in the ordinary course of business and, accordingly, are ineligible to enjoy the rights that such status confers. *See, e.g., First Nat'l Bank and Trust Co. of El Dorado v. Ford Motor Credit Co.,* 231 Kan. 431, 646 P.2d 1057, 1062 (1982) (citing Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* § 3.4[3] n. 55 (1980)); *Mother Lode Bank v. General Motors Acceptance Corp.,* 46 Cal.App.3d 807, 120 Cal.

Rptr. 429 (Cal.Ct.App.1975). We need not decide that question here, however, since we have determined that debtors are not buyers in the ordinary course of business.

**4.** O.R.C. § 1309.25(B) provides that:

[A] security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

the Dealership to sell the tractor. Plaintiff presses this as a ground in its favor separate from ordinary course of business considerations. Though plaintiff treats this as a separate ground, it is clear that it is but another face of the question of whether the sale to debtors was in the ordinary course of business. This is so because paragraph 4.F of the Agreement provides in pertinent part:

> Dealer shall have no right to dispose of Collateral except in the *ordinary course of business* upon customary terms for value received, and then only upon the express condition that at the time of sale and on or before delivery to a third party, Dealer shall secure payment in form satisfactory to KTC [Kubota Tractor Co.]. (Emphasis supplied.)

■ 3. Policy Considerations. In this contest between Kubota and plaintiff, it is appropriate that plaintiff should bear the loss. *See First Bank of North Dakota (N.A.)-Jamestown v. Pillsbury Co.*, 801 F.2d 1036 (8th Cir.1986) (U.C.C. § 1–103 incorporates general equitable principles, one of which is to place responsibility on the party best able to prevent the harm). The policy of the buyer in the ordinary course exception to the primacy of the inventory lender's lien is rooted in commercial expediency. Requiring good faith retail purchasers in the ordinary course to search for encumbrances on purchased items is impractical and cumbersome. *In re Fiesta Corp.*, 25 B.R. 236 (Bankr. W.D.Wis.1982); *First Dallas Cty. Bank v. General Motors Acceptance Corp.*, 425 So.2d 460 (Ala.Ct.App.1982), *aff'd, Ex parte General Motors Acceptance Corp.*, 425 So.2d 464 (Ala.1983). The buyer in the ordinary course of business doctrine "encourage[s] the marketability of goods and support[s] the reliance interest of buyers in the ordinary course who assume that they have clear title to the goods they purchase." Lori S. Segal, *The Buyer-Secured Party Conflict and Section 9–307(1) of the UCC: Identifying When a Buyer Qualifies for Protection as a Buyer in Ordinary Course*, 50 Fordham L.Review 657, 668–69 (1982).

Those principles ought not to avail this plaintiff, a lender to an insider buyer which seeks to prime the lien of Kubota, a prior and properly perfected inventory lender. Kubota did all it could have been expected to do to protect its security interest. It properly and timely filed a UCC–1 financing statement and continuation of same. Further, Kubota did what it reasonably could be expected to do to track the disposition of its collateral. Its monthly record checks are typical in the floor planning financing business. *Taylor Motor Rental, Inc. v. Associates Discount Corp.*, 196 Pa.Super. 182, 173 A.2d 688 (1961). Moreover, Kubota's answer to an interrogatory propounded by debtors states that it did not learn of the sale of the tractor until after debtors had filed their bankruptcy petition. This lack of notice is consistent with the debtors' failure to remove the tractor from the dealership premises after the purchase, thereby concealing from Kubota the fact that the tractor had been purchased.[5]

For the foregoing reasons, we hold that there are no genuine issues of material fact, and Kubota is entitled to judgment as a matter of law. Summary judgment in favor of Kubota will be granted.

---

**5.** It is worth noting that O.R.C. § 1309.31(C) (identical to U.C.C. § 9–312(3)) allows a purchase money lender to prime the prior lien of an inventory lender only, *inter alia*, when the purchase money lender provides written notice to the inventory lender. This requirement, of course, presupposes that the purchase money lender has checked the U.C.C. files and has found evidence of a prior security interest in the goods.