In re Dennis W. TREILING and Marie Treiling, Debtors.

James F. DORAN, Plaintiff,

v.

Dennis W. TREILING, Defendant.

Vincent DE JOSEPH, Plaintiff,

v.

Dennis W. TREILING, Defendant.

Bankruptcy No. 882–80479–20.

United States Bankruptcy Court, E. D. New York.

July 29, 1982.

Hession, Halpern & Bekoff by Kenneth Halpern, Mineola, N. Y., for debtors.

Melvin R. Cannon, Bay Shore, N. Y., for James F. Doran.

Stephen D. Hans, Flushing, N. Y., for Vencent De Joseph; Francis M. Cerniglia, Flushing, of counsel.

ROBERT JOHN HALL, Bankruptcy Judge.

James Doran ("Doran") and Vincent De Joseph ("De Joseph") (collectively "the movants") each move this Court to order Dennis W. Treiling ("the debtor") to turn over to them moneys allegedly deposited with him as an escrowee.[1] Both motions are denied.

[1]. No objection was taken to the form of the requested relief. *Cf.* Fed.R.Bankr.P. 701(1)

*Findings of Fact*

1. From 31 October 1980 to 22 January 1982, the debtor engaged in the brokering of businesses under the trade name of Allied Business Investment ("ABI") located at 1919 Broadhollow Road, Farmingdale, New York.

2. The business of the debtor was to solicit buyers and sellers of businesses that the debtor might bring such parties together, effectuate a sale and earn a commission.

3. At all relevant times, Lee Schwartz ("Schwartz") was an employee and agent of the debtor. Moreover, he was authorized to solicit prospective purchasers, explain the contractual arrangements, accept deposits and issue receipts therefor. The standard form receipt used by ABI and issued to each of the movants was entitled "DEPOSIT RECEIPT/EARNEST MONEY AGREEMENT" and provides in pertinent part:

> Broker is authorized to *hold the above deposit check* until a more formal contract is signed. . . .

> Broker's commission is to be paid as per a separate agreement.

(Emphasis added).

A. *Doran*

4. In August 1981, in response to a newspaper advertisement, Doran came to ABI, spoke with Schwartz and indicated his interest in purchasing a laundromat in Seaford; whereupon on 18 August 1981, Doran's wife wrote out a check payable to ABI in the amount of $2,900.00 as a deposit on such laundromat, gave it to Schwartz who issued the Dorans the above indicated standard form receipt.

5. On or about 22 September 1981, the attorney for the laundromat contacted the Dorans by a letter in which he "called the whole thing off" apparently due to the parties failure to execute a formal contract.

6. Thereafter, Doran demanded, to no avail, that the debtor return his $2,900.00. Consequently, on 15 October 1981, Doran

(proceeding to recover money requires summons and complaint.)

commenced suit in Suffolk District Court against the debtor and the laundromat's owner.

## B. *De Joseph*

7. On or about 2 November 1981, De Joseph contacted ABI concerning the possible purchase by him of a Coca Cola route. De Joseph spoke to Schwartz who accepted a $3,200.00 check payable to ABI and issued De Joseph the standard form receipt. Additionally, Schwartz told De Joseph that the money would be held "in escrow" and would be returned if he decided not to proceed with the purchase.

8. Thereafter, De Joseph rode the Coke route once and decided he did not wish to purchase it. The debtor, however, refused his demand for a refund of his deposit.

9. Notwithstanding the language in the receipts that the debtor was to hold the deposit checks pending formal contracts, the debtor cashed the checks of both movants, comingled them with the funds of ABI and dissipated all of the proceeds in satisfying ABI's ongoing business expenses.

10. Moreover, on or about January 1982, ABI closed down and went out of business and closed its checking account on or about 19 February 1982. Thereafter, on 1 March 1982, the debtor and his spouse filed a voluntary joint petition under chapter 13 of the Bankruptcy Code.

11. The debtor apparently has no bank accounts at this time although he is anticipating a 1982 tax refund check "in excess of $3,000.00".

12. There are also at least two additional claimants in the same situation as Doran and De Joseph having deposited $5,000.00 and $2,500.00 respectively with the debtor when he was doing business as ABI.

13. Finally, no evidence was presented as any arrangements between the debtor and anyone regarding the debtor's entitlement to brokerage commissions.

### Conclusions of Law

1. Doran and De Joseph deposited checks representing $2,900.00 and $3,200.00 respectively with the debtor in trust as an escrowee.

2. The debtor converted the checks and the proceeds therefrom.

3. However, the movants property has been dissipated leaving nothing for them to demand the return of or impress a trust upon.

### Discussion

Under the prior law an "equitable lien" was said to attach "to trust funds in the possession of a debtor in bankruptcy which [was] not defeated by comingling the trust moneys with other funds. *Sonnershein v. Reliance Insurance Co.*, 353 F.2d 935, 936 (2d Cir. 1965). However,

> to sustain a claim to trust property or to an equitable lien thereon, the claimant must depend upon his ability to identify the property in its original or substituted form in the hands of the [debtor] * * * The basic idea of the trust doctrine as applied in bankruptcy is a fair and reasonable identification of the property or fund so as not to harm other creditors. It is not enough, therefore, to show merely that the funds or property came into the bankrupt's hands * * * the claimant must assume the burden of ascertaining and tracing the trust property, and where it is alleged that such property has been converted into other property in the hands of the bankrupt, the claimant has the burden of tracing the trust property therein.

*Id.* quoting 4 *Collier on Bankruptcy* ¶ 70.-25[2] at 354–58 (14th ed. 1978); *accord, In re Morales Travel Agency*, 667 F.2d 1069 (1st Cir. 1981); *Gulf Petroleum v. Collazo*, 316 F.2d 257 (1st Cir. 1963); *American Service Co. v. Henderson*, 120 F.2d 525 (4th Cir. 1941); *see also Malone v. Gimpel*, 151 F.Supp. 549 (N.D.N.Y.1956), *aff'd per curiam*, 244 F.2d 954 (2d Cir. 1957); *In re Simon*, 167 F.Supp. 214 (E.D.N.Y.1958).

■ Under the present Code, the commencement of a case under chapter 13 creates an estate comprised of essentially everything the debtor then owns or subse-

quently acquires prior to the case being closed, dismissed or converted to chapter 7. 11 U.S.C. §§ 541, 1306 (Supp. IV 1980). However, where the debtor possesses only bare legal title, the estate's interest is subject to the equitable interests of third parties. *Id.* at § 541(d). Or, in other words, "[t]o the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate." 124 Cong.Rec. S17413 (daily ed. October 6, 1978) (remarks of Sen. DeConcini). This is essentially a restatement of the law vis-a-vis trust funds as it existed under the Act. 4 *Collier on Bankruptcy* ¶ 541.24 at 541–88 (15th ed. 1982). Accordingly, the two issues to be decided are (1) were these trust funds and (2) can they be traced?

### Trust Funds

For an escrow arrangement there must be a written agreement under which the grantor deposits property with and relinquishes control to an escrowee with the subsequent delivery of the property by the escrowee to the grantee conditioned upon the happening of some event. *In re Verrazzano Towers, Inc.,* 10 B.R. 387, 407 (Bankr.E.D.N.Y.1981); *Menkis v. Whitestone Savings & Loan Association,* 78 Misc.2d 329, 356 N.Y.S.2d 485 (Dist.Ct. Nassau County 1974); *Tierney v. Whitestone Savings and Loan Association,* 77 Misc.2d 284, 353 N.Y.S.2d 104 (N.Y.C.Civ.Ct.1974), *rev'd per curiam on other grounds,* 83 Misc.2d 855, 373 N.Y.S.2d 724 (App. Term 1975).

In the instant cases, each movant deposited a check with the debtor under a written instrument authorizing the debtor to hold such checks pending the signing of formal contracts. Moreover, although the debtor denies authorizing Schwartz to tell the movants that the deposits would be held in

escrow, the receipts evidence such an intention. *Cf. Fargo v. Burke,* 262 N.Y. 229, 186 N.E. 683 (1933). Consequently, the Court finds that the checks were deposited in escrow.

Moreover, inasmuch as "[t]he law makes the depository a trustee for both parties...; [and] imposes upon him a duty not to deliver the escrow to any one except upon strict compliance with the conditions imposed," *Avalon East, Inc. v. Monaghan,* 43 Misc.2d 401, 251 N.Y.S.2d 290, 296 (Sup. Ct.N.Y.County 1964) quoting *Fargo v. Burke,* 262 N.Y. 229, 233, 186 N.E. 683 (1933) (citation omitted), any misappropriation of the deposited property is a conversion subjecting the escrowee to damages for his failure, *id.*

■ In the instant cases, the debtor was only authorized to hold the checks in escrow. Accordingly, his cashing of them was a conversion as was his comingling of the proceeds with his own moneys and their dissipation. *470 West End Corp. v. East River Savings Bank,* 102 Misc.2d 1024, 424 N.Y.S.2d 859 (N.Y.C.Civ.Ct.1980); *Cf. Helman v. Dixon,* 71 Misc.2d 1057, 338 N.Y.S.2d 139 (N.Y.C.Civ.Ct.1972) (provision for escrowee to hold *funds* is implied authority to cash check.) Consequently, could the movants trace the funds, they could claim them as their own.[2]

### Tracing

■ In an attempt to trace the funds, Doran points to the $3,000.00 tax refund the debtor is anticipating. Doran's theory is that the debtor overpaid his tax bills with Doran's converted trust funds. Accordingly, Doran argues, the $3,000.00 is his own.

The problem is that he has failed to prove this. The only evidence presented was that the debtor cashed all of the escrow checks and paid his then current bills with the

---

2. The debtor also claims an interest in the deposited funds by virtue of the brokerage services he performed. However, an escrowee has no lien upon the property to compensate him for his services or expenses in connection with the escrow. *Entertainment and Amusements of Ohio, Inc. v. Barnes,* 49 Misc.2d 316, 267 N.Y.S.2d 359 (Sup.Ct. Onandaga County 1966);

accord, *Mayeri Corporation v. Shea & Gould,* 112 Misc.2d 734, 447 N.Y.S.2d 413 (Sup.Ct.N.Y. County 1982). Moreover, as the party claiming a contractual right to compensation, he must bear the burden of establishing such a contract—which burden the debtor has failed to carry.

proceeds therefrom. There was no evidence presented, however, as to which bill was paid with which funds. Consequently, the Court has no way of knowing if the $3,000.00 is Doran's or De Joseph's or the two other depositors, or rather whether the tax payments to the IRS were derived from commissions the debtor earned and therefore belong to the estate for the benefit of the general creditors. *See Sonnershein*, 353 F.2d at 937.

Accordingly, the movants have failed to carry their burden of proof and their request for a turnover is denied.[3] Settle Order.

---

**3.** Having denied the movants' request for a turnover, the Court offers no opinion as to whether the debtors' chapter 13 plan, which proposes to pay the unsecured creditors (including the depositors whose checks were converted) 12 cents on the dollar, comports with the Code's requirements for confirmation; or rather, whether it is an abuse of chapter 13's broader discharge provisions. *See* 11 U.S.C. § 1325(a)(3); *see also* §§ 507(a)(5) and 1322(a)(2).