In re EVANS PRODUCTS COMPANY, Evans Financial Corporation, HMC Funding Corporation, Rand Acceptance Corporation, Evans Steel City, Inc., Grossman's, Inc., Lindsley, Inc., PIC Holding Company, Debtors.

Bankruptcy Nos. 85–00512–BKC–TCB to 85–00519–BKC–TCB.

United States Bankruptcy Court, S.D. Florida.

Dec. 10, 1986.

See also, Bkrtcy., 65 B.R. 31, D.C., 65 B.R. 870.

Mitchel H. Perkiel, Levin & Weintraub & Crames, New York City, Robert A. Mark, Stearns Weaver Miller, Weissler Alhadeff & Sitterson, Miami, Fla., for debtors.

Patrick A. Murphy, Murphy, Weir & Butler, San Francisco, Cal., for Bank of America NT & SA, as Agent and Collateral Agent.

Francis L. Carter, Steel, Hector & Davis, Miami, Fla., for Unsecured Creditors' Committees of EPC and EFC.

Selinda Melnik, Milbank, Tweed, Hadley & McCloy, New York City and Patrick Barry, English, McCaughan & O'Bryan, Ft. Lauderdale, Fla., for Committee of Non-Insider Equity Security Holders.

Ezra Cohn and Mark Kaufman, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., and John Rogers Camp and Patrick Scott, Miami, Fla., for Retail Group Creditors' Committee.

## ORDER DENYING REHEARING (LEVIN & WEINTRAUB)

THOMAS C. BRITTON, Chief Judge.

The debtors' New York Co-Counsel, Levin & Weintraub, have moved for rehearing and reconsideration (C.P. No. 2184a) of the Order on Fee and Expense Applications (C.P. No. 2163). The Order is based upon a Memorandum Decision—Fee Applications dated October 20, 1986 (C.P. No. 2058). The motion is supported by an affidavit (C.P. No. 2184b) and by a memorandum (C.P. No. 2208). The motion was heard on December 8.

As is clear from the memorandum decision, page 8, the application was for compensation for 3,515 hours at $212 an hour. I accepted the reasonableness of the hours spent. However, I found the average hourly rate excessive and found the reasonable hourly rate for the services performed by this firm to be $134. The reasons prompting this finding are stated in the Memorandum Decision.

■ Among those considerations, I noted that the average hourly rates of the other eight firms employed for the reorganization proceedings of these debtors averaged $134. The hourly rate sought by this applicant exceeded that average by 58%. It exceeded the other highest hourly rate by 33%. The services required and the quality of the services provided by movant and the other eight firms employed specifically as bankruptcy counsel in these cases were sufficiently similar to indicate movant's fee to be excessive in this case.

I also noted that the average hourly rate for services provided in these cases by the San Francisco counsel for the secured lenders was also $134, a coincidence since these applications were prepared separately and filed more or less simultaneously. The San Francisco firm enjoys a national reputation for current bankruptcy expertise equal, I believe, to any other in the country. The range of services it was called upon to provide in these cases was essentially comparable to those required of movant. The quality of the services provided by the San Francisco firm and the results achieved by the San Francisco firm were each consistently and markedly superior to the services provided *in this case* by any other firm, including the movant. I found, therefore, that the reasonable hourly rate for this movant could not exceed $134.

Movant's argument is that the average hourly rate I employed for comparative purposes disregarded the fact that substantially less of movant's services were performed by para-professionals (paralegal assistants and law clerks). Movant argues that I should not question its judgment in the assignment and delegation of its services between attorneys and para-professionals. I disagree.

■ I did not overlook the disparity noted by movant. Legal services which can be satisfactorily performed by a junior associate or a para-professional do not become more valuable merely because they are performed by a senior partner. The determination of a reasonable hourly rate for a firm's services, therefore, must consider the reasonableness with which the work was assigned to the personnel of the firm. It was and is clear to me that movant's charge in this instance was excessive in light of what I observed of the nature and quality of the services provided by movant as compared with those provided by the other eight firms, including the movant's principal adversary, the San Francisco firm. I believe that the excessive cost was to a large extent due to the unreasonable assignment or distribution of its work.

The motion for rehearing and reconsideration is denied.

I have somewhat extended the foregoing comments here because this motion, like the original application (and like almost every other of the 159 applications filed in this case) has been unopposed and it is quite possible that no one will defend this court's determination if it be appealed. As I have noted in the Memorandum Decision, the review of fee applications in a bankruptcy proceeding is one area where the adversary system generally fails us. It is uncommon for any attorney to question in any particular the fee application of any other attorney in a case in which both attorneys must seek approval of their compensation. These attorneys will encounter one another again and people who live in glass houses do not throw stones. I do not, therefore, attribute much weight to the fact that no other attorney has questioned this application. It is for this very reason, I suppose, that courts are clearly charged with the responsibility of carefully scrutinizing fee applications whether they be questioned or not.

I am told that the San Francisco firm had reviewed this motion (as it did the original application) with its clients, the 22 banks in the lender's group, and that these banks have no objection. In these cases, the payment of these fees will, in effect, come from the pockets of the shareholders of these 22 banks. I doubt that the original application and this motion received careful analysis by a completely disinterested, qualified attorney who is familiar with the services provided. I believe it much more

probable that these clients accepted the recommendations of the San Francisco firm, recognizing that, as a practical matter, it would serve no earthly purpose for them to do otherwise. In these matters, someone must bear the responsibility of saying no and that responsibility cannot be delegated to attorneys or their clients.