**In re DATA ENTRY SERVICE CORPORATION, Debtor.**

**Bankruptcy No. 85 B 10943.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 15, 1988.

Anton R. Jalukas, U.S. Atty., Margaret C. Gordon, Asst. U.S. Atty., Chicago, Ill., for U.S.

Joel H. Shapiro, Kamenear, Kadison and Anderson, Chicago, Ill., for Data Entry Service Corp.

## MEMORANDUM AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

■ The Small Business Administration (the "SBA") has filed a Motion for Lien Determination and Order for Distribution.[1] The motion alleges that the SBA has a first lien upon all personal property of Data Entry Service Corp., Inc. (the "Debtor"), including the proceeds thereof. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

**1.** Pursuant to Bankruptcy Rule 7001(2) a proceeding to determine the validity of a lien is an adversary proceeding and therefore should have been commenced by the filing of a complaint, not a motion. Nevertheless, since no party has raised a procedural question, this Court will

## FACTS

On October 6, 1981, the First National Bank of Cicero (the "Bank") loaned the Debtor $296,800 (the "Loan"). The Loan was evidenced by a note and an SBA form called "Authorization and Loan Agreement", (the "Agreement"). Both the note and SBA form were signed by the Debtor. The Agreement contains a provision entitled "3. Terms of Loan", which provides, *inter alia,* as follows:

(c) Collateral:

(1) First lien under Illinois Uniform Commercial Code on all machinery, equipment (excluding automotive equipment), furniture and fixtures, and the proceeds thereof, now owned and hereafter acquired.

(2) First lien under Illinois Uniform Commercial Code on all inventory, accounts, general intangibles, and the proceeds thereof, now owned and hereafter acquired.

The Agreement ends with the statement "Borrower hereby agrees to the conditions imposed herein" and is signed by the Debtor's president and secretary. On October 13, 1981 the Bank filed two financing statements signed by the Debtor with the Secretary of State of Illinois,[2] asserting a security interest in the collateral described in the Agreement. In 1983, the Bank assigned the Loan to the SBA. The Debtor defaulted on the Loan and in 1985 the Debtor filed a Chapter 11 petition. The SBA alleges that the Debtor owes it $440,239.66 in principal, and interest accrued as of August 23, 1985 with interest accruing at a rate of $144.88 per day. All assets of the Debtor have been sold for $15,000 pursuant to authorization of this Court dated December 17, 1985.

## DISCUSSION

■ The question now before the Court is who is entitled to the proceeds of the

resolve the dispute as a contested matter under Bankruptcy Rule 9014.

**2.** The financing statements were filed pursuant to Ill.Rev.Stat. ch. 26, para 9–401 (1986).

sale. The SBA says it had a lien on all of the Debtor's assets and therefore it is entitled to the proceeds. The Debtor counters by saying the SBA's Agreement is not a "security agreement" for Bankruptcy Code and Uniform Commercial Code, ("UCC"), purposes and therefore the SBA has no security interest. Ill.Rev.Stat. ch. 26, para. 9–203(1)(a)(1986). The Debtor specifically points to 11 U.S.C. § 101(44), which provides that a security agreement is an "agreement that creates or provides for a security interest", and the UCC, at section 9–105(1), as adopted in Illinois, likewise defines security agreement as an "agreement which creates or provides for a security interest." Ill.Rev.Stat. ch. 26, para. 9–105(1) (1986). The Debtor says the Agreement does not meet either statutory definition. Of course if the Agreement is a security agreement then it, in conjunction with the SBA note and financing statements, give the SBA a perfected security interest.

Under Article 9 of the UCC, there is no requirement that a document creating a nonpossessory security interest be labeled "security agreement". There are no magical titles under Article 9. Indeed, one purpose of Article 9 was to abolish technical traps. *See* Ill.Rev.Stat. ch. 26, paras. 9–101, 9–102 Official Comment (1986). As provided in the drafters' comments to UCC § 9–203, the purpose behind the requirement of a written security agreement to create a nonpossessory security interest is twofold. First, a written document will prevent evidentiary disputes as to what items are secured and second it will fulfill a Statute of Frauds requirement and prevent the enforcement of claims based only on an oral contract. Ill.Rev.Stat. ch. 26, para. 9–203 comments 3, 5 (1986). The UCC provides, in pertinent part, that a security interest will become enforceable against a debtor when:

(a) the debtor has signed a security agreement which contains a description of the collateral ...; and

(b) value has been given; and

(c) the debtor has rights in the collateral. *Id.* at para. 9–203(1)(a).

Any writing signed by a debtor that adequately describes the collateral and which establishes that the parties intended to create a security interest will be valid as a security agreement. *In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir.1973) (financing statement and Board of Directors' resolution create a security interest). *See also In re Bollinger Corp.*, 614 F.2d 924 (3rd Cir.1980) (note and financing statement); *Barton v. Chemical Bank*, 577 F.2d 1329 (5th Cir.1978) (affidavit and letter); *In re Wambach*, 343 F.Supp. 73 (N.D.Ill.1972), *aff'd*, 484 F.2d 572 (7th Cir.1973) (notes, guarantee, assignment and financing statement) and *In re Martin Grinding and Machine Works, Inc.* 42 B.R. 888, 890 (Bankr.N.D.Ill.1984), *aff'd*, 793 F.2d 592 (7th Cir.1986).[3]

The "Composite Document" theory, which was adopted by the Seventh Circuit in *Wambach*, stands for the proposition that a party may prove the existence of a security agreement through all documentation surrounding a loan transaction. Therefore, this Court must decide whether the writing, in this instance the Agreement, together with the note and financing statements objectively indicate that the parties intended to create a security interest. *Bollinger*, 614 F.2d at 927–28.

The Agreement, executed by the Debtor, includes as a condition precedent of the Loan that the Debtor will provide the SBA with collateral. The signed note also give the SBA rights in the collateral. It states that "[H]older is further empowered, to collect or cause to be collected or otherwise to be converted into money all or any part of the Collateral...." Finally, there would be little or no reason for the Debtor to sign

---

**3.** In *Martin Grinding,* the Seventh Circuit held that a financing statement and other loan documents could not modify an unambigous security agreement. Thus the court ruled that a financing statement could not supplement a security agreement to create a security interest in collateral covered in the financing statement but not in the security agreement. However, that holding does not affect the outcome of this dispute because both the financing statement and the Agreement here cover the same collateral.

the financing statements and allow them to be filed if the parties did not intend to create a security interest.

There can be no doubt from the language contained in the documents that the Agreement, alone or together with the signed note and signed financing statements, evidence that the parties intended to create a security interest in favor of the SBA.[4] Moreover, as there is no allegation that the Debtor misunderstood the nature or terms of the Loan when he executed the documents there can now be no claim of unfairness to the parties.

Based on the foregoing, the SBA's Motion is hereby granted. Accordingly, the Court finds that the SBA holds a perfected security interest in the collateral of the Debtor as described in the Authorization and Loan Agreement and financing statements. Thus, the Debtor shall pay to the SBA the proceeds of the December 17, 1985 sale of collateral, less usual and customary costs of sale pursuant to 11 U.S.C. § 506(c).[5]

---

**4.** In fact, the last phrase of the Agreement, in which the Borrower "agrees to the conditions imposed herein", is sufficient, together with the express term of the loan providing for described collateral, to make the Agreement standing by itself a security agreement under Ill.Rev.Stat. ch. 26, para. 9–105(1)(1986). *See Numeric* at 1331. The only reasonable interpretation of the two read in tandem is that the Debtors, by signing the Agreement, agreed to give the Bank a security interest in that collateral.

**5.** The SBA agrees that the Debtor is entitled to recover the costs of liquidation under 11 U.S.C. § 506(c).