**In re COMMAND SERVICES CORP., Debtor.**

**Bankruptcy No. 87–00528.**

United States Bankruptcy Court, N.D. New York.

March 22, 1989.

Menter, Rudin & Trivelpiece, P.C., Syracuse, N.Y. (Kevin M. Newman, of counsel), Sheehan, Phinney, Bass & Green, Prof. Ass'n., Sp. Counsel, Manchester, N.H. (Edmond J. Ford, of counsel), for debtor.

Kim F. Lefebvre, Asst. U.S. Trustee, Albany, N.Y.

## MEMORANDUM–DECISION AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

Sheehan, Phinney, Bass & Green, P.A. ("Sheehan") has moved this Court pursuant to Bankruptcy Rule ("Bankr.R.") 9023 for an order amending its Order entered October 12, 1988 regarding the final allowance of fees to Sheehan as Special Counsel to Command Services Corporation ("Debtor").

The motion was scheduled for hearing before the Court at a motion term held at the United States Courthouse, Syracuse, New York on December 6, 1988.

Upon the ex parte application of Sheehan, the Court, by Order dated December 5, 1988, permitted the motion to be submitted on papers alone.

The Certification affixed to Sheehan's Bankr.R. 9023 motion papers indicate that copies were mailed to Kevin Newman, Esq. ("Newman") and Kim Lefebvre, Esq., United States Trustee ("UST") on November 4, 1988.

There were no appearances at the motion term held on December 6, 1988 and the Court took the matter under submission on that date.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction of this matter pursuant to 28 U.S.C.A. §§ 1334 and 157(a), (b)(1) and (2)(A) and (O) (West Supp.1988).

### FACTS

The Debtor, in the business of the sales and service of micro computers, filed for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp.1988) ("Code"), on April 17, 1987. Upon the recommendation of its court-appointed bankruptcy counsel, Sheehan was appointed Special Counsel pursuant to Orders of the Court dated May 14, 1987 and October 26, 1987. On April 28, 1988, Sheehan filed a Final Application for Compensation ("Final Application") as Special Counsel, seeking a total services fee of $25,157.50.

Of significance for purposes of this motion, Sheehan alleged in its Final Application that it had recovered the sum of $80,000.00 from the Bank of Vermont and was holding $30,777.15 "as security for its fees and expenses in a segregated escrow account." See Final Application at para. 15 (Apr. 15, 1988) (signed by Edmond J. Ford, Esq.). Sheehan further alleged that it had a "security interest" in the $80,000.00 which secured the payment of its fees. See id. at para. 16.

At the hearing held before the Court on the Final Application on May 31, 1988, Sheehan appeared in support without opposition, although the UST had filed a written objection on May 26, 1988. Thereupon, the Court reserved decision on the Final Application and requested Sheehan to submit a memorandum of law in support of its position that it held a lien or security interest in the monies recovered from the Bank of Vermont permitting it to withhold approximately $31,000.00 from the Debtor.

On June 20, 1988 Sheehan filed a memorandum of law in which it maintained that, pursuant to New Hampshire law, it held an attorney's lien on the settlement proceeds of $80,000.00 which arose from a pre-petition cause of action against the Bank of Vermont. Sheehan also contended that this lien entitled it to be adequately protected in the event it was ordered to turn over the entire proceeds to the Debtor.

On October 12, 1988, the Court issued a Memorandum–Decision and Order which determined the amount of Sheehan's fee and further concluded that "the $80,000.00 recovered by the Debtor from the Bank of Vermont resulted not from a series of 'Collection Actions' as Sheehan postures, but as the direct and sole result of the adversary proceeding filed against the Bank of Vermont, Slack and Silberdick, post-petition in December, 1987 on theories of equitable subordination, agency, contract of instrumentality, contract-joint venture, negligence, fraud and intentional misrepresentation, contractual interference, unfair trade practice, securities fraud, racketeering, RICO forfeiture and fraudulent conveyance." See In re Command Serv. Corp., No. 87–00528, slip op. at 8–9 (Bankr.N.D.N.Y. Oct. 12, 1988).

On October 20, 1988, Sheehan filed the instant motion, pursuant to Bankr.R. 9023, seeking to vacate the Court's October 12, 1988 Order relating to the nonexistence of its purported statutory charging lien with respect to the settlement proceeds. After its papers were returned by the Bankruptcy Clerk due to the absence of a return date, Sheehan refiled the motion on October 25, 1988 with a return date of November 29, 1988. The attached Certifications indicated that copies of the originally filed motion were mailed to Newman and the UST on October 19, 1988 and then remailed

to each on October 24, 1988 with notice of the return date and again on November 4, 1988, as indicated, when the hearing was adjourned to December 6, 1988.

## DISCUSSION

Procedurally, Sheehan has attempted to manipulate its final fee request to the detriment of the Debtor and its creditors and in the process has engaged in conduct which this Court condemns as both unethical and irresponsible.

It was clear from the very outset of Sheehan's appearance in this case that it was either ignorant of or without regard for those sections of the Code which deal with professional compensation in a Chapter 11 context.

On October 13, 1987, Sheehan filed its First Application for Interim Compensation ("First Application") seeking services and expenses of $17,077.50 and $4,177.37, respectively. It maintained that this Court had no authority to review its receipt of a pre-petition retainer of $11,000.00 from the Debtor and could only determine the existence of the fees owed under state law and rule on relief from the automatic stay imposed pursuant to Code § 362(a). Sheehan further claimed that the Court should modify the stay to permit Sheehan's disposition of that retainer by setting off its expenses and pre and post-petition services.

Additionally, Sheehan's First Application advanced a theory of reimbursement for clerical and secretarial time separate and apart from the hourly rate of its professionals, a position which finds little or no support in case law. *See In re Command Serv. Corp.,* 85 B.R. 230, 233 (Bankr.N.D. N.Y.1988) (collecting cases).

On March 11, 1988, the Court issued a Memorandum–Decision and Order which approved the application of $5,500.00 of Sheehan's retainer to its pre-petition services as well as the compensation of an additional $5,000.00 for services rendered post-petition, post-appointment and $3,489.04 in expenses, pursuant to Code §§ 329 and 330, but specifically denied reimbursement of $2,446.00 in secretarial and clerical time. *See id.*

Sheehan's Final Application filed April 28, 1988, as indicated, sought an additional $16,819.00 in fees since July 31, 1987, $1,000.00 for the preparation and defense of the instant application and $2,130.61 in expenses, as well as renewed a request for amounts totalling $7,338.50 disallowed by the Court in its March 11, 1988 Memorandum–Decision and Order, including $2,110.50 in secretarial time. This was premised upon the theory that the Debtor had recovered some $80,000.00 from the Bank of Vermont as a result of Sheehan's efforts. Sheehan also sought the $3,489.04 in expenses from the Debtor that it had been awarded by the Court in the same Memorandum–Decision but which it claimed was unpaid. Thus, Sheehan requested a total fee and reimbursement as Special Counsel's expenses of $30,777.15 in the Final Application and announced that it was asserting its rights as the holder of a security interest in the $80,000.00 recovery after remitting the balance of $49,222.85 to the Debtor. *See* Final Application, *supra,* paras. 9–17.

At that juncture, Sheehan had already been authorized a fee of $10,500.00 which had been paid through application of the $11,000.00 pre-petition retainer and was holding an additional $30,777.15 of property of the estate upon the premise that it had a security interest or lien.

As noted previously, the Court had inquired of Sheehan at the May 31, 1988 hearing the basis for its view that it was entitled to retain approximately $31,000 of property of the estate in its capacity as Court appointed Special Counsel to the Debtor and had provided Sheehan an opportunity to brief its position, which Sheehan had submitted to the Court in memorandum form on June 20, 1988. After consideration of both the Final Application and said memorandum, the Court had concluded that no lien or security interest existed since the recovery of the $80,000.00 was the result of a post-petition adversary proceeding against the Bank of Vermont. However, the Court chose not to surcharge Sheehan upon concluding that it held a "reasonable belief that it had a statutory

charging lien." *In re Command Serv. Corp., supra,* slip op. at 12.

Having requested that the Court pass upon its lienholder status entitling it to unilaterally retain some $31,000 of property of the estate and after the Court rendered an unfavorable decision, Sheehan now postures, through its Bankr.R. 9023 motion, that the Court erred procedurally in even considering said request.

■ While there is merit to Sheehan's contention that a determination as to the validity, priority and extent of a lien is properly brought before a bankruptcy court within the context of an adversary proceeding pursuant to Bankr.R. 7001(2) rather than as a contested matter pursuant to Bankr.R. 9014, courts have concluded that where the rights of the affected parties have been adequately presented so that no prejudice has arisen, form will not be elevated over substance and the matter will be allowed to proceed on the merits as originally filed. *See, e.g., In re Szostek,* 93 B.R. 399, 403 n. 6 (Bankr.E.D.Pa.1988) (Bankr.R. 7001(5): revocation of confirmation order); *In re Morysville Body Works, Inc.,* 89 B.R. 440, 441–442 (Bankr.E.D.Pa. 1988) (Bankr.R. 7001(7): debtor's petition to stay IRS in collecting responsible penalty tax from its principal); *In re Roberts Hardware, Co.,* 103 B.R. 396, 398, n. 3 (Bankr.N.D.N.Y.1988) (Bankr.R. 7001(1): action to recover property); *In re Data Entry Serv. Corp.,* 81 B.R. 467, 468 n. 1 (Bankr.N.D.Ill.1988) (Bankr.R. 7001(2): lien determination and distribution order); *In re McClain Airlines, Inc.,* 80 B.R. 175 (Bankr.D.Ariz.1987) (defense under Code § 541 to debtor's motion to assume lease does not require opponent to file adversary complaint); *In re Stern,* 70 B.R. 472, 473 n. 1 (Bankr.E.D.Pa.1987) (Bankr.R. 7001(4): revocation of discharge); *In re Wallman,* 71 B.R. 125, 126 n. 1 (Bankr.D.S.D.1987) (Bankr.R. 7001(2): debtor's motion for contempt and sanctions due to nonexistence of lien); *Doran v. Treiling (In re Treiling),* 21 B.R. 940, 941 n. 1 (Bankr.E.D.N.Y.1982) (Bankr.R. 7001(1): proceeding to recover money); *cf. Smith v. New York State*

*Higher Education Serv. Corp. (In re Smith),* 103 B.R. 392, 395 (Bankr.N.D. N.Y.1988) (noting operative verb in Bankr.R. 7001 is "may", in contrast to "shall" in Bankr.R. 9014). *Accord In re Banks,* 94 B.R. 772 (Bankr.M.D.Fla.1989) (motion of Chapter 11 debtor's counsel for recognition and approval of charging lien). This is particularly true where no objection to the procedural defect has been lodged. *See, e.g., In re Banks, supra,* 94 B.R. at 773; *In re Szostek, supra,* 93 B.R. at 403 n. 6; *In re Roberts Hardware Co., supra,* at 398 n. 3; *In re Data Entry Serv. Corp., supra,* 81 B.R. at 468 n. 1; *In re Stern, supra,* 70 B.R. at 473 n. 1; *In re Treiling, supra,* 21 B.R. at 941 n. 1. *Contra In re Smith and Son Septic and Sanitation Serv.,* 88 B.R. 375, 380–81 & n. 6 (Bankr.D. Utah 1988) (Bankr.R. 7001(1): UST's request for money judgment against debtor for unpaid quarterly fees) (collecting cases); *In re Ross & Hurney Paving, Inc.,* 51 B.R. 374 (Bankr.E.D.N.Y.1985) (Bankr.R. 7001(2, 7): turnover order of funds arising from mechanic's lien); *cf. Flavor Dry, Inc. v. Lines (In re James E. O'Connell Co., Inc.),* 82 B.R. 118, 119–20 (N.D.Cal.1988) ("may" in Bankr.R. 2010 and 9025 is used as enabling verb, not as indication of availability of procedures other than adversary proceeding).

Indeed, the notice pleading of the Federal Rules and the mandate of Rule 8(f) of the Federal Rules of Civil Procedure ("Fed. R.Civ.P."), incorporated by Bankr.R. 7008(a), that "[a]ll pleadings shall be so construed as to do substantial justice" support this liberal interpretation by a court of equity. *See In re Morysville Body Works, Inc., supra,* 89 B.R. at 441–442 & nn. 4, 5 (discussing basis of authority as Fed.R. Civ.P. 8(f), 10 and the express or implied consent of the parties and citing case law to the contrary) (citations omitted). Bankr.R. 9005 is also germane, applying as it does Fed.R.Civ.P. 61 which provides, in part, that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the par-

ties." *See In re Ross & Hurney Paving, Inc., supra,* 51 B.R. at 375.

Moreover, where the determination of a lien is sought within the context of other relief sharing a similar basis, one court has treated the adversarial form of the lien determination as subsumed by the motion form of the additional requested relief, albeit faced with the filing of both the adversary proceeding and the contested matter. *See Windfelder v. Rosen (In re Windfelder),* 82 B.R. 367, 369 (Bankr.E.D.Pa.1988) (debtor's adversary proceeding to determine secured status of creditor's claim under Code § 506(a) merged into her motion to avoid the judicial lien under Code § 522(f)(1)); *cf. In re Banks, supra,* 94 B.R. at 774 (court refers to award of fee from separate application as part of record in motion to acknowledge existence and amount of attorney's charging lien). In a sense, the absence of objection can be viewed as a waiver to any procedural infirmities. *See id.* at 370. *See also* 28 AM.JUR.2d *Estoppel And Waiver* §§ 154–160, 166 (1966).

Here, Sheehan not only did not object to the Court's procedure treating its entire Final Application as a contested matter pursuant to Bankr.R. 9014, but it asserted within that contested matter its rights as a statutory lienholder and submitted a memorandum of law when requested by the Court to substantiate that position. Yet, when the Court issued the Memorandum–Decision and Order contrary to its point of view, Sheehan now incredulously admonishes the Court that a ruling on the validity, extent or priority of its lien should not have issued since Sheehan did not present the matter to the Court in the proper context of an adversary proceeding pursuant to Bankr.R. 7001.

Sheehan goes on to unreasonably assert that the Court rendered an "evidentiary conclusion" in the absence of testimony, affidavits, cross-examination and witnesses, suggesting somehow that such procedures are not available to parties within the context of a contested matter and are reserved exclusively for litigation in an adversary proceeding. While Bankr.R. 9014 does provide a more summary framework for actions, portions of Part VII of the Bankruptcy Rules are explicitly applicable to contested matters and the balance of the Part VII rules are utilizable at the court's discretion. Thus, the fact that the Court requested a memorandum from Sheehan at the May 31, 1988 hearing to support its position did not preclude it from requesting either an evidentiary hearing or leave to submit additional data.

Moreover, such hindsight posturing is nothing but subterfuge for Sheehan's failure, *prior* to the formal submission of the Final Application, to request an evidentiary hearing, if it thought one was necessary, to flesh out any perceived inadequacies for the burden of proof to demonstrate entitlement to fees is *always* on the applicant. *See In re Pettibone, Corp.,* 74 B.R. 293, 299 (Bankr.N.D.Ill.1987). Here, Sheehan has neither argued nor attached newly discovered evidence nor has it set forth any extraordinary circumstances which might approximate cause or excusable neglect for its failure to do so at the time the Final Application was taken under advisement.

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence ... A motion for reconsideration cannot be used to raise arguments that could and should have been made before the judgment issued." *In re Wildman,* 72 B.R. 700, 704 (Bankr.N.D.Ill.1987) (citation omitted). *See also In re Pettibone, Corp., supra,* 74 B.R. at 298–99. In requiring "notice to any parties in interest and to the United States Trustee and a hearing", Code § 330 satisfies due process. *See In re Pothoven,* 84 B.R. 579, 582–83 (Bankr.S.D. Iowa 1988).

Continuing its frivolous arguments, Sheehan contends that this Court, in proceeding to determine the validity of its lien position, has forced Sheehan to defend the existence of its lien "not against attacks by other parties but rather against attacks by the Court itself" and that, as such, "[t]he Court is acting as plaintiff and jury in violation of Sheehan's rights to due process under the Fifth Amendment of the U.S.

Constitution." *See* Motion to Amend Judgment Regarding the Final Allowance of Fees to Special Counsel To the Debtor Under Rule 9023 para. 7. (Oct. 19, 1988).

■ Case law fully supports a bankruptcy court's review of a request for attorney's fees in the absence of any opposition, both in and out of the bankruptcy context. *See Jordan v. Mark IV Hair Styles, Inc.*, 806 F.2d 695 (6th Cir.1986); *In re Wyslak*, 94 B.R. 540, 541 (Bankr.N.D.Ill.1988); *In re Ochoa*, 74 B.R. 191, 194 (Bankr.N.D.N.Y.1987); *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr.D. Utah 1987); *In re Evans Products Co.*, 69 B.R. 68, 69 (Bankr. S.D.Fla.1986); *In re NRG Resources, Inc.* 64 B.R. 643, 650 (W.D.La.1986); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 219 (Bankr.S.D.N.Y.1986); *In re Wilson Foods Corp.*, 36 B.R. 317, 320 (Bankr.W.D.Okla. 1984).

As Bankruptcy Judge Francis G. Conrad observed in the oft cited *In re S.T.N. Enterprises, Inc., supra,* 70 B.R. at 831, "[u]nder 11 U.S.C. §§ 327–330 and Bankruptcy Rules 2016 and 2017, the Court has an independent judicial responsibility to evaluate the attorneys' fees [citation omitted]." *Accord In re Leff,* 88 B.R. 105, 106 (Bankr.N.D.Tex.1988) ("obligation"). Such a statutorily mandated inquiry is neither an attack, an action or a proceeding against counsel, despite a perception it may have of being engaged in battle with the Court as adversary, since "the bankruptcy court sits as a guardian of the funds available to creditors." *In re Cohen & Thiros v. Keen Enterprises,* 44 B.R. 570, 574 (N.D.Ind. 1984). *See also In re Wyslak, supra,* 94 B.R. at 543; *In re Pettibone, Corp., supra,* 74 B.R. at 300.

In the case at bar, this Court's need to *independently* review Sheehan's fee is all the more critical where the law firm, clearly subject to the jurisdiction of the Court by virtue of its two Orders of Appointment as Special Counsel, sought to withhold some $31,000, which was property of the estate, from a Chapter 11 debtor under the guise of an attorney's charging lien which allegedly arose pre-petition and pre-appointment.

The Court notes that neither Sheehan's initial Order of Appointment dated May 14, 1987, which pertained to continuing litigation, nor the Supplemental Order dated October 26, 1987, which was sought specifically to expand Sheehan's role and permit it to commence the post-petition adversary proceeding against the Bank of Vermont, made any reference to Sheehan's ability to claim a statutory lien for its requested post-petition fees. *Compare* Application by Debtor–In–Possession For Authority To Employ Special Counsel para. 3 (May 13, 1987) *and* Supplemental Application By Debtor–In–Possession · For Authority To Employ Special Counsel paras. 6–7 (October 16, 1987). In fact, in a letter submitted to the Court in support of its initial appointment as Special Counsel, Sheehan represented that on the date of filing, April 17, 1987, it held a pre-petition claim against the Debtor in the sum of approximately $7,700.00 for services performed in the pre-petition litigation. *See* Application By Debtor–In–Possession For Authority To Employ Special Counsel, *supra,* at paras. 10–11 (referring to attached letter from Edmond J. Ford, Esq. to Peter Hubbard, Esq.) (Apr. 28, 1987)). Thus, Sheehan itself recognized the distinction between its pre and post-petition services with regard to the so-called lien. In an about face, Sheehan now contends that apparently those same pre-petition services gave rise to its charging lien for an additional $31,000.00.

Finally, Sheehan's motion pursuant to Bankr.R. 9023 argues that this Court's entry of the Order regarding its charging lien was "inefficient and a waste of bankruptcy resources" absent an adversary proceeding. *See* Motion to Amend Judgment, *supra,* at para. 8. While running the risk of elevating this glib comment by a response, the Court can only observe that the entire motion to reconsider has been "inefficient and a waste of bankruptcy courts' resources", instigated as it has been by a party who labors under the misconception that it somehow operates outside of the Code and repeatedly refuses to digest the reasoning of various decisions handed down by this Court in previous matters concerning it. *See, e.g., In re Command Serv. Corp., supra,* 85 B.R. at 230.

Sheehan had clearly waived any possible procedural infirmities in its Final Application by explicitly putting forward its lien theory in its motion papers, appearing at the hearing, submitting a memorandum of law and then resting without requesting an evidentiary hearing. *See In re Windfelder, supra,* 82 B.R. at 370. Moreover, the affidavit of mailing affixed to the Final Application indicated that all creditors and other parties in interest were noticed and the objection lodged by the UST raised issues considered and addressed by the Court in its Memorandum–Decision of October 12, 1988, such as disallowance for secretarial time and computer research. *Compare* Objection Of United States Trustee To Final Application For Compensation Requested By Sheehan, Phinney, Bass & Green, P.A. (May 21, 1988) *with In re Command Serv. Corp., supra.* Additionally, as noted, a hearing was conducted on May 31, 1988 in Syracuse, New York. Therefore, due process was met and no substantive rights were impaired.

This observation is bolstered by further posturing on the part of Sheehan that the existence or non-existence of its lien is only significant in the event that a Chapter 7 trustee appointed in a presumably converted case would seek to recover administrative expenses paid within the preceding Chapter 11 or if there were insufficient funds to pay all of the administrative claims within the Chapter 11. *See* Motion To Amend Judgment, *supra,* at para. 8. Thus, it opines that the Court's requirement that Sheehan defend its lien may be "irrelevant" and "unnecessary." *Id.* This simply begs the question as to why Sheehan so vigorously asserted the existence of its security interest in its Final Application and perhaps points to a lapse of judgment on its part that it would now have the Debtor, the creditors and the Court bear.

█ The record thus reveals a law firm who chose to ignore the law of the case and utilize self-help to "freeze" some $31,000 to the potential detriment of the Chapter 11 Debtor and its creditors and, in effect, approve its own fee in derogation of Code § 330. Violations of the Code or profes-

sional ethics or breaches of fiduciary duties can give rise to the reduction, denial or forfeiture of compensation or other sanctions. *See In re Ken Davis Ind. Int'l, Inc.,* 91 B.R. 742, 748 (Bankr.N.D.Tex.1988); *In re Hargis,* 73 B.R. 622 (Bankr.N.D.Tex. 1987); *In re Damon,* 40 B.R. 367, 376, 378–80 (Bankr.S.D.N.Y.1984); *In re Thompson,* 54 B.R. 311, 316 (Bankr.N.D. Ohio 1985), *aff'd,* 77 B.R. 113 (N.D. Ohio 1987). *See, e.g.,* AMERICAN BAR ASSOCIATION MODEL CODE OF PROFESSIONAL RESPONSIBILITY CANON 1, 6, 7, 9; EC 6–1, EC 6–5, EC 7–4, EC 7–22, EC 7–39; EC 9–2, EC 9–5; DR 9–102 (1981); N.D.N.Y. District Court General Rule 2, 4; N.D.N.Y. Bankr. Local Rule 2, 4. "The federal courts enforce professional responsibility standards pursuant to their general supervisory authority over members of the bar." *United States v. Hammad,* 858 F.2d 834, 837 (2d Cir.1988).

The fact that this Chapter 11 Debtor's Plan of Reorganization has now been confirmed and proof of payment of all administrative expenses, actual and anticipated, has been established to the satisfaction of this Court, does not ameliorate the seriousness of Sheehan's conduct throughout this case.

While the Court was, at one point, of the belief that Sheehan's advancement of its lien status was reasonable, it is now apparent upon review of this law firm's course of conduct throughout the case, including this baseless motion, that its conduct not only was unreasonable and unethical, but is potentially sanctionable under Bankr.R. 9011(a), which, as the bankruptcy analogue of Fed.R.Civ.P. 11, serves "to discourage frivolous litigation and to compensate the victims of such abuse." *Taylor v. Prudential–Bache Securities, Inc.,* 594 F.Supp. 226, 229 (N.D.N.Y.1984). *See Two Star Surgical Supply, Inc. v. New York State Dep't of Social Serv. (In re Two Star Surgical Supply, Inc.,* 92 B.R. 26, 28 n. 2 (E.D.N.Y.1988); Byrne, *Sanctions For Wrongful Bankruptcy Litigation,* 62 AM. BANKR.L.J. 109 (1988); Schwarzer, *Sanctions Under The New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 201 (1985). *See, e.g., In re Taylor,* 77 B.R. 237 (9th Cir.BAP 1987) (Bankr.R. 9011 sanctions imposed by bankruptcy court on creditor's

attorney for filing ex parte motion, rather than adversary proceeding, to obtain declaratory judgment relating to interest in property affirmed).

■ Indeed, if properly admitted evidence on a developed record demonstrates that Sheehan advanced the instant motion for an improper purpose, such as to delay, to harass or to manipulate the court system, or to advance a frivolous position reached without an objectively reasonable pre-filing inquiry, the Court is under a statutory duty to sua sponte impose the appropriate sanctions to compensate the estate and deter future actions of this nature. *See* Bankr.R. 9011(a); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985), *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Oliveri v. Thompson*, 803 F.2d 1265, 1274–75 (2d Cir.1986); *Calloway v. Marvel Enter. Corp.*, 854 F.2d 1452 (2d Cir.1988); *Shmavonian v. Lewis (In re Lewis)*, 79 B.R. 893 (Bankr. 9th Cir.1987); *In re Ksenzowski*, 56 B.R. 819, 834–35 (Bankr.E.D.N.Y.1985). *Cf.* Schwarzer, *Rule 11 Revisited*, 101 HARV.L.REV. 1013, 1020 (1988) ("The proper role of rule 11, however, is not to compensate parties for such costs; it is to deter litigation abuse.") (footnote omitted); Note, *Plausible Pleadings: Developing Standards For Rule 11 Sanctions*, 100 HARV.L.REV. 631 (1988).

Accordingly, the Court finds that a hearing is necessary to make the mandated inquiry under Bankr.R. 9011(a) and determine if grounds exist to levy sanctions, monetary or non-monetary, against Sheehan. Said hearing will also investigate the status of the segregated escrow account allegedly containing the balance of the settlement proceeds. *See In re J & J Record Distributing Corp.*, 80 B.R. 53 (Bankr.E.D. Pa.1987), *aff'd*, 84 B.R. 364 (E.D.Pa.1988). Sheehan and any affected parties will be given a full and fair opportunity to be heard and respond at said hearing. *See Eastway Const. Corp. v. City of New York*, 637 F.Supp. 558, 567–69 (E.D.N.Y.), *modified*, 821 F.2d 121 (2d Cir.1987) (quoting, *inter alia, Roadway Exp. Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464–65, 65 L.Ed.2d 488 (1980)). *See also DeLuca v. Long Island Lighting Co., Inc.*, 862

F.2d 427, 430 (2d Cir.1988) (citing to *Braley v. Campbell*, 832 F.2d 1504, 1514–15 (10th Cir.1987)).

The Court, therefore

ORDERS:

1. That Sheehan shall immediately pay over to the Debtor any sums it is presently holding in excess of the aggregate amount awarded in the Memorandum–Decision and Orders of this Court dated March 11, 1988 and October 12, 1988.

2. That an evidentiary hearing pursuant to Bankr.R. 9011(A) is set down for the 27th day of April 1989 at 10 a.m. at the United States Courthouse, Utica, New York.

3. That Sheehan's Motion To Amend Judgment Regarding The Final Allowance of Fees To Special Counsel To The Debtor Under Rule 9023 be in all respects denied.