In re B & B MARINE SALES
& SERVICE, Debtor.

Bankruptcy No. 90–33399.

United States Bankruptcy Court,
N.D. Ohio, W.D.

March 28, 1991.

Perry Newman, Cleveland, Ohio, for ITT.

Mary Ann Whipple, Toledo, Ohio, for Central Trust.

Louis Yoppolo, Toledo, Ohio, trustee.

## OPINION AND ORDER GRANTING MOTION TO LIFT STAY AND TO ABANDON PROPERTY

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter came on for hearing upon ITT Commercial Finance Corp.'s motion to lift stay imposed by 11 U.S.C. § 362 and to abandon property to which the trustee and Central Trust Company of Northern Ohio have objected. Upon consideration of the evidence adduced at trial and the parties' post-trial briefs, the court finds that said motion should be granted.

### FACTS

On October 2, 1990, Debtor filed its voluntary petition under chapter 7 of title 11. Debtor was, formerly, engaged in the business of retail sales of boats, motors and trailers. In 1985, Messrs. William Fannin and Robert E. McCoy, partners of Debtor, executed an agreement for wholesale financing with ITT Commercial Finance Corp. (ITT). ITT's Exhibit 1. The financing arrangement provided by this document is commonly referred to as a "floor plan". That is, pursuant to the agreement for wholesale financing between the parties, ITT financed Debtor's acquisition of inventory. *Id.* In exchange for this extension of credit, Debtor gave ITT a security interest in the inventory financed by it. *Id.* ¶ 3. Upon sale of the inventory items, Debtor agreed to remit the proceeds. *Id.* After ITT's advancement of funds, ITT "may" send Debtor "a Statement of Transaction or other statement" if it chose. *Id.* Debtor was permitted "ten days" after its mailing to notify ITT of any correction or objection. *Id.*

Debtor and ITT, subsequently in 1990, executed another agreement for wholesale financing. ITT's Exhibit 1. The provisions of this later agreement also included Debtor's desire that ITT finance Debtor's acquisition of inventory, in exchange for which a security interest would be extended ITT in its inventory. Additionally, Debtor was permitted seven days, not the previous ten day period, in which to question or object to ITT's advancement of funds after its mailing, if any, of a statement of transaction. *Id.*

On November 17, 1990, ITT filed the instant motion to lift stay and to abandon property, claiming a valid and perfected security interest in certain inventory, to-wit: 42 boats of the Debtor. The trustee

objected to said motion claiming that ITT had failed to perfect its security interest in this inventory and that, as a result, the trustee could avoid ITT's security interest in the inventory. At the preliminary hearing held upon ITT's motion on December 11, 1990, at which the following appearances were made: Perry Newman, attorney for ITT, Louis Yoppolo, trustee; Vaughan Hoblet, attorney for Debtor, and Kenneth Stumphaizer, attorney for Central Trust, the parties agreed that ITT's motion should be granted as to 32 items of Thompson boat inventory. However, the parties could not agree as to disposition of the remaining 10 boats.

Central, an unsecured creditor of Debtor's estate, filed a brief in opposition to ITT's motion claiming that Debtor did not authorize or consent to ITT's extension of credit on ten boats delivered to Debtor from Thompson Boat Co., the manufacturer of the boats in issue. *See* ITT's Exhibit 5 (copies of MSO's of boats in issue). Rather, Central claims it advanced funds directly to Debtor, at Debtor's request, to finance these ten boats; Central does not, however, claim a security interest in these boats. Central asserts that because Debtor did not consent to the extension of funds for payment of the ten boats in issue, a necessary element for attachment pursuant to O.R.C. § 1309.14(A), no attachment of ITT's security interest occurred. At the final hearing, the parties stipulated that the remaining issue for the court's determination was whether, initially, a valid security interest was created and attached to the ten boats.

Mr. Tim Bowen, regional branch manager for ITT, testified that his responsibilities include managing branch operations in the credit collection and sales areas. Mr. Bowen stated that ITT financed inventory for Debtor by first being contacted by the product manufacturer, Thompson Boat Company, for approval authorization. If approved, the manufacturer would deliver the product to Debtor, Debtor would then review the product to ensure that its condition was acceptable. Mr. Bowen testified that pursuant to the parties' underlying documents, Debtor had the opportunity within seven days after ITT sent a statement reflecting the floor planning of certain inventory, to object to the transaction, thus protecting Debtor from any unwanted inventory or defective inventory. Additionally, pursuant to a repurchase agreement between ITT and Thompson Boat, and as a result of Debtor's default, Thompson was responsible for repossession of the ten boats in issue. *See* Central's Exhibit E. Lastly, Mr. Bowen testified that ITT received certain FAX communications from Debtor, specifically Mr. Fannin, requesting that ITT not "floor" certain boats. *See* Central's Exhibits A, B, C, and D. Mr. Fannin did not testify at the final hearing on ITT's motion.

Mr. Dale Anderson, president of Thompson Boat Company, confirmed Mr. Bowen's testimony that this procedure was followed by Thompson in manufacturing and distributing a boat to Debtor for resale. Deposition of Dale Anderson of February 7, 1991 at 11–17 (February 13, 1991). That is, after verbal request for production of boats, Thompson would contact ITT for a credit approval number. Mr. Fannin, at his § 341 meeting, identified this same procedure as that followed by the parties. Post–Hearing Brief of ITT, Fannin at 66.

Specifically, regarding the ten boats in issue, Mr. Steve Wandschneider, employed by Thompson Boat Company as vice president of finance, reviewing a boat order form used by Thompson in its ordinary course of business, testified that an order was phoned in by the dealer on or about February 20, 1990. Deposition Transcript of Steve Wandschneider of February 7, 1991 at 24 (February 14, 1991); Post–Hearing Brief of ITT, Wandschneider at 24. Because no special financing arrangements about these ten boats had been made, Mr. Dale Anderson, president of Thompson Boat Company, stated that Thompson then contacted ITT for a credit approval number. Deposition Transcript of Dale Anderson of February 7, 1991 at 13 (February 13, 1991); Post–Hearing Brief of ITT, Anderson at 13. After delivery and inspection of these boats, Mr. Fannin on behalf of Debtor requested they be returned as they

were not in a saleable condition. Post–Hearing Brief of ITT, Fannin at 181. Subsequently, Thompson removed the boats from Debtor's place of business and sent them to Collins Marine. Deposition Transcript of Dale Anderson at 57–60.

Admitted into evidence were copies of three FAX transmissions signed by "Bill Fannin", "Bill" and from "Bill Fannin", a partner of Debtor. Central's Exhibits A–3. These transmissions list serial numbers, including those of the ten boats in issue, requesting that these inventory items not be floored by ITT. *Id.* The reasons given for this request is that repairs were necessary for these boats.

Mr. Vaughan Hoblet, legal counsel employed by Debtor for partnership purposes, prior to filing its petition, testified that he recalled speaking to Mr. Jeff Pike, an employee of ITT, regarding ITT's removal of certain inventory items from Debtor's floor plan financing. Mr. Hoblet recalled that he requested that the ten boats in issue be removed from ITT's financing, and that Mr. Pike indicated these items would be removed. However, Mr. Hoblet also stated that it could be possible that Mr. Pike said these items "would" be taken off. Mr. Hoblet testified that he advised Mr. Fannin, to contact Mr. Pike regarding the condition of the boats in issue, and to indicate that certain repairs were necessary before those boats would be saleable. Mr. Hoblet admitted that he advised Mr. Fannin to return those boats that had not been repaired.

Mr. Jeff Pike, an account manager employed by ITT and supervised by Tim Bowen, testified that he had been contacted by Mr. Hoblet in August and that he seemed "aggressive" in requesting the removal of the ten boats from the floor plan arrangement. Furthermore, Mr. Pike stated that he understood, at the time of the conversation, that Debtor did not want these inventory items included on the floor plan financing as they were to be returned to, or repaired by, Thompson.

## DISCUSSION

The sole issue for the court's determination is whether Debtor consented to ITT's financing of the ten boats as part of its inventory, that is, whether "attachment" occurred. O.R.C. § 1309.14(A) contains the necessary elements for attachment, of which all three must be met. O.R.C. § 1309.14(A). These elements are, that,

(1) The collateral is in the possession of the secured party pursuant to agreement, or the Debtor has signed a security agreement which contains a description of the collateral . . .;

(2) Value has been given; and

(3) The Debtor has rights in the collateral.

O.R.C. § 1309.14(A)(1), (2) and (3).

Pursuant to the Agreement for Wholesale Financing executed by Messrs. William Fannin and Robert E. McCoy, partners of Debtor, a security interest in Debtor's inventory was extended to ITT in exchange for ITT's financing. ITT's Exhibit 1. Although the parties do not dispute the provisions of the writings between the parties, the court must, based upon the writings, determine whether the parties intended to create a security interest in the ten boats. *See In re Data Entry Service Corp.*, 81 B.R. 467, 469 (Bkrtcy.N.D.Ill.1988) (this court must decide whether the writing objectively indicates that the parties intended to create a security interest (citing *In re Bollinger Corp.*, 614 F.2d 924 (3rd Cir. 1980)). A writing reflecting the first element of "attachment" is evident. However, Central asserts that Debtor did not authorize ITT to extend financing on its behalf for the ten boats in issue and that, therefore, the boats are now estate property, free and clear of ITT's lien. The court is not persuaded by this argument.

Central contends that because Debtor did not authorize ITT to floor the ten boats in issue, as evidenced by the FAX transmissions, *see supra* pp. 100–01, that a necessary element of "attachment" has not occurred. The content of these FAX transmissions is consistent with Mr. Pike's testimony stating that Debtor requested that certain inventory items not be included on ITT's floor plan financing as the items were to be returned or repaired. *See su-*

*pra* p. 101. Furthermore, as discussed, the documents underlying the parties' financing arrangement permitted Debtor to object to the placement of inventory items on the floor plan financing. *See supra* pp. 99–100. Lastly, Mr. Fannin, at his § 341 meeting, testified that ten boats were returned to Thompson due to damage, unacceptable to Debtor.

The court finds that Mr. Fannin in transmitting the FAX messages to ITT was exercising Debtor's opportunity to object to financing for various reasons. These FAX transmissions do not request removal from the "floor plan" stating that the inventory items were not ordered; rather, removal is requested due to the damaged conditions of the items. To that end, the court finds that the transaction involving the ten boats in issue is representative of the normal course of dealing between the parties. That is, Debtor ordered the boats; Thompson received credit approval for production of the boats; the boats were manufactured; the boats were delivered to Debtor and the MSO's, to ITT; Debtor inspected the boats and rejected those that were not saleable. After Debtor's rejection, the boats were removed from Debtor's inventory. Apparently, but for the intervening bankruptcy petition, the necessary paperwork to remove these items from the floor plan financing would have subsequently been processed.

The court finds that the first element necessary for attachment occurred as the parties executed a security agreement evidencing their intent that ITT finance collateral in Debtor's possession. Value was, obviously, given as ITT paid Thompson for these boats. Debtor obtained rights in this collateral as, upon receipt of the inventory, Debtor could retain the items for resale or reject the nonsaleable items.

ITT has submitted copies of its financing statements evidencing compliance with the filing requirements for perfection of Debtor's inventory. ITT's Exhibit 2. Although initially, the trustee objected to ITT's security interest for the reason that it failed to maintain actual and continued posses-

sion of the MSO's, as required by O.R.C. § 1548.20, the parties have presented no evidence to the contrary. Additionally, Mr. Bowen testified that ITT maintained continuous possession of the MSO's. The court finds that ITT has a valid and perfected security interest in the boats.

Finally, no evidence has been presented reflecting equity in these boats for the benefit of the estate. 11 U.S.C. § 362(d)(2)(A). Because no objection to ITT's request for abandonment has been made, the court finds that ITT's motion to lift stay and to abandon property is well taken. It is therefore

ORDERED that motion of ITT Commercial Finance Corp. to lift stay imposed by 11 U.S.C. § 362 and to abandon property be, and it hereby is, granted.